Victoria-Joy Godwin
c/o 5130 S. Fort Apache #215-262
Las Vegas, NV 89148

```
___ FILED        ___ RECEIVED
___ ENTERED      ___ SERVED ON
                 COUNSEL/PARTIES OF RECORD

      AUG 1 4 2017

    CLERK US DISTRICT COURT
      DISTRICT OF NEVADA
BY:_____DEPUTY
```

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT C

2:17-cv-02178-MMD-CWH

Victoria-Joy Godwin,
    Plaintiff

vs.

Senior Garden Apartments,
Russell Ricciardelli,
Steven Rameriz
DOES 1-10
    Defendant/Respondent

*JURY TRIAL REQUESTED*

COMPLAINT FOR:
(1) SEXUAL HARASSMENT
    QUID PRO QUO
(2) SEXUAL HARASSMENT
    HOSTILE ENVIRONMENT
(3) DISCRIMINATION
(4) INTENTIONAL INFLICTION
    OF EMOTIONAL DISTRES
(5) NEGLIGENT INFLICTION
    OF EMOTIONAL DISTRES

## VENUE AND JURISDICTION

1. This Court has been given jurisdiction iover the actions cited herein under the United States Fair Housing Act, 42 United States Code (USC) notably two sections delineated as QUID PRO QUO, and HOSTILE ENVIRONMENT, which comport with the anti-discrimination tenets that prohibit denying housing on the basis of sex specified at USC §§ 3601-3619..

## PARTIES

2. Plaintiff is and at all times of the discrimination based on sexual harassment, was a
resident ot the State of Nevada, and, as a handicapped person under the American

1  Disability Act and is entitled to live free from harassment, sexual demands and
2  harassment, grooming by a predator, and discrimination via hostile environment (living
3  without a functioning air conditioner or stove and oven for 4 to 10 months), and a NO
4  CAUSE eviction for refusing to succumb to the coercion to comply with sexual demands
   because the limited mobility, erratic use of hands and fingers, and partial
5
   blindness, is incapable of finding suitable living quarters.
6
7  3.   Defendant, Senior Garden Apartments, 1809 and 1813 E. Charleston Blvd., Las
8  Vegas, Nevada, 89104, is a housing provider which Plaintiff believes and alleges is
9  authorized under Nevada State law to provide living quarters suitable for habitation free
10 from sexual harassment, quid pro quo sexual demands, and, hostile environment and
11 retaliation for reporting said offenses.
12 4.   Defendant, Russell Ricciardelli, is a citizen of the United States and a lawful
13 resident of the State of Nevada, and the owner of the properties listed above at all times
14 during the 20 months the offenses were committed, and, Plaintiff believes and alleges,
15 has the duty and responsibility to ensure that the property is a safe living quarter for all
16 races, sexes, and handicapped peoples.
17 5.   Defendant, Steven Ramirez, is and at all times of the offenses cited herein,
18 Plaintiff believes and alleges, is a legal resident of the State of Nevada and a citizen of
19 the United States, and a resident and/or manager of the Senior Garden Apartments,
20 having been entrusted with carrying out the duties as prescribed by co-defendant,
21 Ricciardelli, including adhering to the laws of the State of Nevada and the United States
22 of America as they pertain to ensuring the health and safety of the tenants.

23                              **FACTS**
24 Plaintiff alleges as follows:
25

—2—

6. The events described herein all occurred in Clark County, Nevada, and fall under the Fair Housing Act of the United States;

7. Beginning on or about January 4, AD2016, Plaintiff lived as a neighbor (at first) then as a tenant subject to the constant sexual harassment of Defendant Ramirez once Ramirez became building manager approximately two months later;

8. The sexual harassment, including innuendoes that Plaintiff was Ramirez's wife, and that Plaintiff was 'cheating' on Ramirez when Plaintiff spoke to another man on the property or cooked for the then-handyman Les, who was widowed just 3 days before Plaintiff moved in, grabbing Plaintiff and pulling Plaintiff's body into his after demanding 'payment of a hug' for opening a difficult-to-open jar, to pointing to his cheek for a kiss after assisting with another task which Plaintiff was unable to complete, continued through the filing of this complaint via the progression from Quid Pro Quo to the Hostile Environment in which Plaintiff now resides (as the oven is still not working properly);

9. During the months from January 2016 through May 2016, the harassment became unbearable, as Plaintiff realized the 'grooming' of Plaintiff involved driving (Plaintiff is partially blind and does not drive) to run errands, for which Plaintiff showed gratitude by sharing home-cooked meals and baked goods with Defendant Ramirez, until Ramirez began refusing the offerings saying that "that's not what I want", and repeatedly inquired, upon entering Plaintiff's apartment for a repair "Are you decent? I hope not";

///

10. Plaintiff became aware that the maintenance man Les (and thereafter Billy) were told by Ramirez to not repair anything for Plaintiff, but to tell Plaintiff that Plaintiff had to "go through" Ramirez if she wanted anything repaired;

11. When Plaintiff became aware that the transportation to and from errands ceased because Plaintiff was not cooperating with the invitations to have sex, Plaintiff tried responses other than playing along or teasing, and attempted a more serious approach to let Ramirez know his advances were unwanted but that Plaintiff could still be 'friends' by shunting Ramirez's attempts to make Plaintiff feel guilt with texts saying that if Ramirez treated his then-girlfriend Michelle as if she had something above her neck, Ramirez might be able to undo his complaint "she doesn't want to be with me." Plaintiff did not feel sorry that Michelle did not want to be with Ramirez, but tried showing Ramirez that the two had nothing in common, which fell on deaf ears, as Ramirez began suggesting that each time Plaintiff came to his apartment to bring baked goods or a meal, or wanted to watch a TV program, or even look at the new TV Ramirez installed, or his new curtains, Ramirez would be running around naked

12. In late May, Plaintiff was awakened at 2:30 a.m. by Ramirez's voice leaving Gloria's apartment which was directly across the narrow 4-foot sidewalk from Plaintiff's window, and Plaintiff realized that Ramirez's advances were not playful and had the potential for danger.

13. A few days later, Plaintiff asked Defendant Ricciardelli if he could find Plaintiff another apartment in the building next door (1809), as Les was still the handyman and Plaintiff's door would not be close to Ramirez's and Ramirez might forget

— 4 —

about her, especially if the incident at Gloria's at 2:30 in the morning meant Ramirez found a willing partner and/or had convinced Michelle to "be with him"

14. On June 1, AD2016, Plaintiff moved to the building next door;

15. The new apartment needed some repairs, but Ramirez would not let Les do them unless Ramirez was around, and when Plaintiff complained that the things that needed addressed were not taken care of and asked Ramirez why, Ramirez retorted "well, you left my harem." Plaintiff was not looking for an enemy so chose this time (somewhere between June 2 and June 10) to make a special visit to Ramirez in his office where Plaintiff played the 'religion' card, informing Ramirez that Plaintiff, in 1993, took a vow of chastity in church, prior to beginning her missionary post, to remain chaste until she were married, and Ramirez's response was to toss a washer that Plaintiff had found on the floor and placed on the desk prior to sitting down, saying "Here's the ring."

16. After Les left as handyman and Ken failed to repair a drawer correctly, Billy (not a party) assumed the role of maintenance man and became friends with Plaintiff to the point where Billy would do small tasks for Plaintiff, who had fallen on July 5, AD2016, and was now a home-bound patient with limited use of her knees and hands to add to her woes of partial blindness. Billy ran small errands for Plaintiff, and Plaintiff made him a dinner once, and apparently Billy informed Ramirez of that and was told by Ramirez that Billy was not to do any repairs for Plaintiff. Billy also informed Ricciardelli that Marsha was complaining that Steven was "hitting on her" all the time, and Ramirez told Defendant Ricciardelli that Billy was the one 'hitting' on Marsha and got Billy fired;

—5—

17. Plaintiff elicited the assistance of her social worker, who telephoned Ramirez on numerous occasions, citing the reports from Plaintiff's caretakers who complained of black smoke billowing from the oven, all of which received the same response from Ramirez, that Plaintiff's oven was dirty, leading plaintiff to contact the County Health Inspector who was prohibited from making any determinations regarding oven operations beyond whether or not it turned on; Ramirez informed Defendant Ricciardelli that the Inspector told Ramirez the oven was dirty and that's why I was smoking, a blatant lie;

18. Each time Plaintiff sent her social worker or nurse or caretaker to Ramirez with a problem Ramirez stayed just this side of 'legal' with the response "I'm working on it", eliminating Plaintiff's right to withhold rent for non-repair of a necessary item such as air conditioner or oven;

19. On March 3, aD2017 Plaintiff's social worker took Plaintiff to the police department to file a complaint after the one she mailed to them was returned with the message Plaintiff needed to file in person. Plaintiff was informed that there was no proof that the failure to repair was retaliatory for Plaintiff's not sleeping with Ramirez;

20. Plaintiff sent her caretaker to complain about the oven continuing to smoke and wet off the fire alarm and Ramirez told her he was "working on it";

21. From that point forward, including to the present date, Ramirez harassed Plaintiff with mixed messages that suggested repairs were being withheld until such time as Plaintiff succumbed to the unwanted advances, including but not limited to: air conditioner not being repaired through the entire long, hot summer of 2016 and

- 6 -

into 2017, Ramirez telling Plaintiff she looked "hot" even though Plaintiff attempted to suggest Ramirez use the word 'younger', Plaintiff's oven going unusable during the Thanksgiving holiday, the Christmas holiday, until Easter of 2017; Ramirez removing the mesh that deterred pigeons from roosting on Plaintiff's awning with consulting Plaintiff until Plaintiff took photos of the feces, straw, and feathers at her doorstep and complaining to Defendant Ricciardelli that the problem was escalating; removing the dimmer switch from Plaintiff's wall, reversing the wiring in the bathroom switches and blaming Plaintiff for breaking another kitchen drawer, replacing the ceiling fan which Plaintiff did not find malfunctioning but enable Ramirez to tell Ricciardelli that Plaintiff demanded a new fan, leaving the old fan parts and the new fan parts in the middle of the floor compelling Plaintiff and her nurse to trip over them for 4-5 days while Ramirez lied that the 'new fan was defective and he was going to have to return it but couldn't get to it right away, ignoring letters from Plaintiff's occupational therapist, physical therapist, caretaker, nurse, and social worker regarding the excessive temperature of the apartment, sending Plaintiff a text that Ramirez's A/C unit was doing the same thing Plaintiff's was doing but the only way Plaintiff would get a new unit was if this one died (Plaintiff, believing it unethical to 'help' the A/C unit 'die' would not stoop so low as to tamper with the unit, hoping the letters would induce Ramirez to act honorably, finding out instead that Ramirez went out that very night and bought himself a new unit without asking Plaintiff if she wanted/needed one), calling Plaintiff "full of sh**" and telling Plaintiff to "kiss my arse" in front of Plaintiff's caretaker (who was appalled at such behavior

—7—

from a repairman), and, finally, sending Plaintiff a note that if the oven knob melted once more time Plaintiff would have to pay to replace and install it, in spite of the fact that Defendant Ricciardelli bought the same exact knob that melted the first time instead of using common sense and purchasing a more sturdy one or repairing the oven!;

22. On April 10, AD2017, Plaintiff wrote all of the incidents of sexual harassment perpetrated by Ramirez in a letter to Defendant Ricciardelli, and handed it to her social worker to drop in the mail after he dropped her off at a medical appointment. When Plaintiff returned to the property, Defendant Ricciardelli informed Plaintiff that Plaintiff was to go to Ramirez with any questions, requests, or complaints and Plaintiff agreed, realizing there was no sense trying to squelch Ramirez's gloating by saying that a letter had just been put in the mail when Ricciardelli emphatically turned a deaf ear;

23. On or about April 14, AD2017, Plaintiff insisted on speaking with Ricciardelli about the removal of the mesh and the oven and Ramirez texted Plaintiff that Ricciardelli would be on the property that day and if Plaintiff wanted to see him to come to the office;

24. At approximately 10 a.m., Plaintiff met with Ricciardelli whose first words were "Steven made some mistakes, but we're all friends here and there' no need to mail anything to my house. We're all adults here and there's no need for mediation or courts. We can always talk things out", establishing a pattern and practice of turning a deaf ear to women who complain about Ricciardelli's 'man-servant', showing Plaintiff that Plaintiff had no remedy except at the hands of Ramirez,

-8-

which meant giving in to the unwanted advances because Ramirez now had ALL the power over Plaintiff and even after Ricciardelli READ the full litany of egregious acts, didn't care one whit for Plaintiff's plight, making Plaintiff seriously consider whether Ricciardelli would reap the benefits Ramirez might solicit for them both;

25. On July 12, AD2017, a short time after Plaintiff requested to view the owner's manual for the oven, Defendant Ricciardelli had Plaintiff served with a NO CAUSE eviction notice;

26. On July 13, AD2017, Plaintiff filed a complaint with HUD in the San Francisco office and, other than being interviewed on or about July 27, D2017, an investigator telephoned Plaintiff for an interview which lasted one hour and fifteen minutes, during which time, Laura Uribe informed Plaintiff that Plaintiff would receive a letter informing Plaintiff of the decision to deny the claim or a complaint for Plaintiff to sign and return, and to date Plaintiff has heard nothing else;

27. On August 4, AD 2017, Ramirez texted Plaintiff asking if Plaintiff intended to bring the rent over that morning, which raised Plaintiff's suspicions that Ramirez might steal the money since it was not due as Plaintiff was 'kicked out', but which is causing such emotional stress waiting for the 'knock on the door', that Plaintiff has elected to act outside the bureaucracy since this demand appears to suggest that an unlawful detainer is pending and Plaintiff cannot afford an eviction on her record, as it is difficult enough to try to move while handicapped and without the

funds to pay first and last month's rent since Defendants have given no indication what will become of the cleaning deposit Plaintiff left in Ricciardelli's possession.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(by Plaintiff for Sexual Harassment - Quid Pro Quo)

28. Plaintiff incorporates herein by reference all of the above allegations in paragraphs 1 through 27 as if fully set forth at this point;

29. The sexual harassment that extended over a period of 20 months is the proximate cause of harm to Plaintiff by Defendants Ramirez, Ricciardelli, and Senior Garden Apartments by knowingly allowing such conduct when there is a duty to prevent the unlawful and harmful acts that resulted in injury to the Plaintiff under the Quid Pro Quo tenet of the Fair Housing Act, through the intentional infliction of emotional distress and discrimination on the basis of sex;

30. The wrongful conduct as herein alleged of Defendants was malicious, oppressive, and fraudulent in nature; Defendants engaged in the acts either directly or through indifference and neglect, all the way through the attempt to evict Plaintiff to cover up their scheme of inducing women to the property to be a part of a 'harem'. Each engaged in the harmful conduct with the intent to cause harm to the Plaintiff with a conscious disregard for Plaintiff's rights or religious beliefs, subjecting Plaintiff to cruel and unjust hardship. Ramirez acted with an evil and fraudulent motive, fully condoned by Ricciardelli, both with the intent to vex, injure, annoy, and strip Plaintiff of her rights and with the conscious disregard for the law mandating habitable living quarters regardless of sex. Defendants' actions and/or failure to act were despicable, reprehensible, and in blatant

violation of the law regarding providing habitable premises as are provided to other tenants who never miss a rent payment, acting with extreme indifference to Plaintiff's right to petition the landlord for remedy directly, entitling Plaintiff to an award of punitive and exemplary damages from Defendants.

## SECOND CAUSE OF ACTION

(by Plaintiff for Sexual Harassment - Hostile Environment)

31. Plaintiff incorporates herein by reference all of the above allegations in paragraphs 1 through 30 as if fully set at this point;

32. The sexual harassment element invoking the hostile environment element extended over a period of 8 months is the proximate cause of harm to Plaintiff by Defendants Ramirez, Ricciardelli, and Senior Garden Apartments by knowingly allowing and encouraging such conduct when there is a duty to prevent the unlawful and harmful acts that resulted in injury to the Plaintiff under the Fair Housing Act, through the intentional infliction of emotional distress and discrimination on the basis of sex;

33. The wrongful conduct as herein alleged of Defendants was malicious, oppressive, and fraudulent in nature; Defendants engaged in the acts either directly or through indifference and neglect, all the way through the attempt to evict Plaintiff to cover up their scheme of inducing women to the property to be a part of a 'harem'. Each engaged in the harmful conduct with the intent to cause harm to the Plaintiff with a conscious disregard for Plaintiff's rights to be treated as all other tenants who seek repairs, particularly when it involves air conditioning in 100+ degree temperatures, health care professionals insisting that Plaintiff's living situation is unbearable, and subjecting caretakers employed by the State Medicaid agency also being subjected to excessive hear in the apartment, thick black smoke

—//—

from a faulty oven, improperly cooked foods, and extra work to clean or cook to make up for the deficiencies, subjecting Plaintiff to cruel and unjust hardship. Ramirez acted with an evil and fraudulent motive, fully condoned by Ricciardelli, both with the intent to vex, injure, annoy, and strip Plaintiff of her rights and with the conscious disregard for the law mandating habitable living quarters regardless of sex. Defendants' actions and/or failure to act were despicable, reprehensible, and in blatant violation of the law regarding providing habitable premises as are provided to other tenants who never miss a rent payment, acting with extreme indifference to Plaintiff's right to petition the landlord for remedy directly, entitling Plaintiff to an award of punitive and exemplary damages from Defendants.

### **THIRD CAUSE OF ACTION**

(by Plaintiff for Discrimination)

Plaintiff incorporates herein by reference all of the above allegations in paragraphs 1 through 33 as if fully set forth at this point;

34. The sexual harassment element invoking discrimination extended over a period of 20 months is the proximate cause of harm to Plaintiff by Defendants Ramirez, Ricciardelli, and Senior Garden Apartments by knowingly allowing and encouraging such conduct when there is a duty to prevent the unlawful and harmful acts that resulted in injury to the Plaintiff under the Fair Housing Act, through the intentional infliction of emotional distress and discrimination on the basis of sex;

35. The wrongful conduct as herein alleged of Defendants was malicious, oppressive, and fraudulent in nature; Defendants engaged in the acts either directly or through indifference and neglect, all the way through the attempt to evict Plaintiff

-12-

to cover up their scheme of inducing women to the property to be a part of a 'harem'. Each engaged in the harmful conduct with the intent to cause harm to the Plaintiff with a conscious disregard for Plaintiff's rights to be treated as all other tenants who seek the peaceful enjoyment of their homes and ask for reasonable repairs, particularly when it involves air conditioning in 100+ degree temperatures, health care professionals insisting that Plaintiff's living situation is unbearable, and subjecting caretakers employed by the State Medicaid agency also being subjected to excessive hear in the apartment, thick black smoke from a faulty oven, improperly cooked foods, and extra work to clean or cook to make up for the deficiencies, subjecting Plaintiff to cruel and unjust hardship. Ramirez acted with an evil and fraudulent motive, fully condoned by Ricciardelli, both with the intent to vex, injure, annoy, and strip Plaintiff of her rights and with the conscious disregard for the law mandating habitable living quarters regardless of sex. Defendants' actions and/or failure to act were despicable, reprehensible, and in blatant violation of the law regarding discrimination, as evidenced by the refusal to evict other tenants who "went off their meds" causing major disruptions and property damage, who brought children or pets onto the property contrary to the rules, and/or who sold drugs, threatened others with murder and/or sent gang members to intimidate Plaintiff by bashing in her door with a heavy object, and covering up for such intimidating behavior when Plaintiff attempted county mediation get involved. To throw Plaintiff out under a NO CAUSE eviction is a fraud and discriminatory because Plaintiff would not sleep with the building manager. Plaintiff has no idea the degree of involvement Defendant Ricciardelli would assume if Plaintiff HAD agreed to exchange sexual favors for repairs, but to lead the NO CAUSE eviction charge suggests something despicable either way.

Defendants acted with extreme indifference to Plaintiff's right to petition the landlord for remedy directly, entitling Plaintiff to an award of punitive and exemplary damages from Defendants.

## FOURTH CAUSE OF ACTION

(by Plaintiff for intentional infliction of emotional distress by all Defendants)

36. Plaintiff incorporates herein by reference all of the above allegations in paragraphs 1 through 35 as if fully set forth at this point;

37. The actions of all Defendants in sexual harassment on a quid pro quo basis, for sexual harassment on a hostile environment basis, for discrimination in the harassment, refusal to repair, and eviction, based on Plaintiff's sex, and for intentional infliction of emotional distress, constitutes extreme and outrageous conduct with the intention of causing or the reckless disregard of the probability of causing emotional distress, especially when deliberately turning a deaf ear to the horrendous suffering to which Plaintiff would be subjected whether 'giving in' or not.

38. Because of Defendants acts or failures to act, Plaintiff suffers severe and enduring emotional distress which is caused by Defendants. The behaviors of Defendants are egregious and outrageous because Defendants abused positions of trust, that is of a landlord to whom rent was meticulously paid and his agent entrusted with the overall care of Plaintiff who had strict restrictions on who Plaintiff could call for help. These acts were exacerbated when Ricciardelli insisted (1) that Plaintiff take every issue to Ramirez EVEN AFTER Ricciardelli KNEW OF PLAINTIFF'S PLIGHT, and (2) there was no need for mediation or courts since "We're all adults here and can always talk things out." The degree of betrayal caused physical repercussions to Plaintiff as well as heightened fear and

emotional stress, which Ricciardelli knew or should have known had to be the result of sending the hen back to the fox. Ricciardelli know Plaintiff was susceptible to harm because of Plaintiff's partial blindness, recent injuries to her legs and hands, and financially because Ricciardelli holds $500 that Plaintiff would need to move to another location, not to mention that buying furniture for an unfurnished apartment cannot be accomplished on the meager SSI disability Plaintiff receives. Ricciardelli willingly and knowingly placed Plaintiff in the hands of an abuser fully aware that Plaintiff cannot go, subjecting Plaintiff to a degree of stress that has major repercussions unless Plaintiff gives in to both men.

39. To tell Plaintiff that Plaintiff has no other remedy other than through the hands of Ramirez, literally, is cruel and perhaps even vicariously satisfying to Ricciardelli, who is not so naïve as to think that the 2;30 a.m. sighting of Ramirez leaving Gloria's apartment, or Ramirez's 'hitting' on Marsha are innocuous anomalies. Furthermore, Ricciardelli acted unreasonable and intentionally with the recognition that his acts and failure to cure were likely to result in Plaintiff's emotional stress

40. The wrongful conduct of Defendants as herein alleged was malicious and oppressive and fraudulent in nature. Defendants, and all of them, engaged in the above-described wrongful acts with the full knowledge that harm, one way of the other, would come to Plaintiff, and with the callous disregard for Plaintiff's rights, subjecting Plaintiff to cruel and unjust hardships ranging from engaging in avoidance tactics, soliciting assistance from health care professionals, moving to another building, and tolerating the intolerable living conditions from the lack of repairs of life-sustaining elements, with the intent of deceiving Plaintiff and causing Plaintiff injury, such as to constitute malice, fraud, and oppression.

1  Defendants acted with a fraudulent and evil motive and with the deliberate intent
2  to vex, injure, and annoy Plaintiff, and a conscious disregard of Plaintiff's rights.
3  Defendants' acts were despicable, reprehensible, and in blatant violation of the
4  law. Defendants furthermore acted with extreme indifference to Plaintiff's rights,
5  entitling Plaintiff to exemplary ad punitive damages for this cause of action.

## FIFTH CAUSE OF ACTION

(by Plaintiff for negligent infliction of emotional distress by all Defendants)

41. Plaintiff incorporates herein by reference all of the above allegations as if fully set forth in paragraphs 1 through 40;

42. Defendants had a legal duty to refrain from engaging in and/or condoning, and/or encouraging sexual harassment on a quid pro quo basis and on a hostile environment basis and from engaging in discrimination and intentional infliction of emotional distress and the negligent infliction of emotional distress, as well as a duty of care to ensure that no such harm would come to Plaintiff as a result of being a woman living at Senior Garden Apartments under the control of Ricciardelli's agents so that no Defendant caused sexual, psychological (how many ways could Plaintiff say NO?) or emotional harm.

43. As the direct and proximate result of the above-cited allegations, Plaintiff has suffered damages which are substantial and continuing.

## PRAYER FOR RELIEF

AS TO THE FIRST CAUSE OF ACTION

For (1) compensatory damages, according to proof, including general and special and (2) for punitive and exemplary damages, in an amount to punish SENIOR GARDEN APARTMENTS, RUSSELL RICCIARDELLI, AND STEVEN RAMERIZ for their wrongful conduct and deter future such conduct by SENIOR

GARDEN APARTMENTS, RUSSELL RICCIARDELLI and, STEVEN RAMERIZ and others.

AS TO THE SECOND CAUSE OF ACTION

For (1) compensatory damages, according to proof, including general and special and (2) for punitive and exemplary damages, in an amount to punish SENIOR GARDEN APARTMENTS, RUSSELL RICCIARDELLI, AND STEVEN RAMERIZ for their wrongful conduct and deter future such conduct by SENIOR GARDEN APARTMENTS, RUSSELL RICCIARDELLI and, STEVEN RAMERIZ and others.

AS TO THE THIRD CAUSE OF ACTION

For (1) compensatory damages, according to proof, including general and special and (2) for punitive and exemplary damages, in an amount to punish SENIOR GARDEN APARTMENTS, RUSSELL RICCIARDELLI, AND STEVEN RAMERIZ for their wrongful conduct and deter future such conduct by SENIOR GARDEN APARTMENTS, RUSSELL RICCIARDELLI and, STEVEN RAMERIZ and others.

AS TO THE FOURTH CAUSE OF ACTION

For (1) compensatory damages, according to proof, including general and special and (2) for punitive and exemplary damages, in an amount to punish SENIOR GARDEN APARTMENTS, RUSSELL RICCIARDELLI, AND STEVEN RAMERIZ for their wrongful conduct and deter future such conduct by SENIOR GARDEN APARTMENTS, RUSSELL RICCIARDELLI and, STEVEN RAMERIZ and others.

AS TO THE FIFTH CAUSE OF ACTION

For (1) compensatory damages, according to proof, including general and special

and

AS TO ALL DAMAGES
1- For interest as provided by law'
2- For costs of suit; and,
3- For such further relief as the Court may deem just and proper.

DATED THIS 13TH DAY OF AUGUST, AD2017

Respectfully submitted by:

*/s/ Victoria-Joy Godwin*

Victoria-Joy Godwin
Unrepresented Party