FILED _____ _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

APR 16 2018

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

1  Victoria-Joy Godwin
   c/o 5130 S. Fort Apache #215-262
2  Las Vegas, NV 89148
   (702) 443-7792

3

4

5              UNITED STATES DISTRICT COURT FOR
6                  THE DISTRICT OF NEVADA

7                                    Case # 2:17cv02178 MMD-CWH)

8  Victoria-Joy Godwin,                )
       Plaintiff                       )   JURY TRIAL REQUESTED
9                                      )
                                       )   SECOND AMENDED
10 vs.                                 )   COMPLAINT FOR:
                                       )   (1) SEXUAL HARASSMENT
                                       )         QUID PRO QUO
11                                     )   (2) SEXUAL HARASSMENT
   Senior Garden Apartments,           )         HOSTILE ENVIRONMENT
12 Russell Ricciardelli, Steven Ramirez; )   (3) DISCRIMINATION
   Edward D Kania; David F. Brown      )   (4) INTENTIONAL INFLICTION
13 Mary Alice Ricciardelli, Ricciardelli )   OF EMOTIONAL DISTRESS
   Family Trust; Eric R. Newmark; and  )   (5) NEGLIGENT INFLICTION
14 DOES 5-10,                          )   OF EMOTIONAL DISTRESS
                                       )   (6) SLANDER
15                                     )   and for
               Defendants             )   (7) CIVIL RIGHTS VIOLATIONS
16                                     )   1. 42 USC 1983 (Free Speech)
                                       )   2. 42 USC 1983 (Illegal Seizure)_
17                                     )   3. 42 USC 1983 (Due Process)
                                       )   4. 42 USC 1983 (Equal Protection)
18                                     )   5. Nevada Constitution Article 1 §8(5)
                                       )   6. Nevada Revised Statutes §118 et seq.

19        Plaintiff amends in order to comply with the mandate to raise all claims within

20 one action; Plaintiff certifies the additional claims are warranted under existing law.

   Plaintiff amends the complaint pursuant to Federal Rule of Civil Procedure
21
   (FRCP) Rule 15a which permits amending until such time as a responsive pleading is
22
   filed, and, in order to preserve the Court's resources.  This Court granted Plaintiff leave
23
   to amend which Plaintiff did via the First Amended Complaint; however, after a review
24
   of the research conducted by the United States Department of Housing and
                                                          Development
25
   (HUD), Plaintiff realized that necessary parties were alluded to but not identified,

                                    1

and herein corrects that defect.  Additionally, in lieu of a bothersome 'supplemental pleading' pursuant to FRCP Rule #15(d), Plaintiff incorporated acts which occurred after the date of the original pleading, but inadvertently omitted identifying them in the caption and the causes cited in the First Amended Complaint.  Plaintiff apologizes for this oversight, promises the Court to use more caution in the future and prays that the Court has not yet reviewed the First Amended Complaint and/or approved it and forwarded it to the Marshal for service.  Since the First Amended Complaint was filed only one week ago, and the original pleading was not reviewed for seven months, Plaintiff seeks reciprocal grace for overlooking the protocols required to comply with the Court's gracious leave to amend which included incorporating documents submitted for Judicial Notice into the facts of this case and into the caption and causes portions.  The leave to amend alerted Plaintiff to the seriousness of the Constitutional violations.

Hence, Plaintiff also complains of deprivation of and conspiracy to deprive Plaintiff of federally protected rights hereinafter enumerated in specificity, and for intentional and negligent infliction of emotional distress, and defamation.

## <u>VENUE AND JURISDICTION</u>

1.      This Court has been given jurisdiction over the actions cited herein under the United States Fair Housing Act, 42 United States Code (USC) notably two sections delineated as QUID PRO QUO, and HOSTILE ENVIRONMENT, which comport with the anti-discrimination tenets that prohibit denying housing on the basis of sex specified at USC 3601-3619.  Additionally, this Court has jurisdiction pursuant to Title 28 U.S.C. §§1331 and 1343(3) in that the controversies arise  under the United States Constitution and under 42 U.S.C. §1983 and 1985 and 28 U.S.C. §§2201 and 2202 in particular, the First, Fourth, Fifth, and Fourteenth Amendments.

Plaintiff further invokes the supplemental jurisdiction of this Court

under 28 U.S.C. §1367(a) to hear and adjudicate state law claims.

Each and all of the acts (or threats of acts) alleged herein were

done by defendants, or their officers, agents, and employees,

under color and pretense of the statutes, ordinances, regulations,

customs, and usages of the State of Nevada. Because this is a

civil action valued in excess of $75,000, Plaintiff also invokes

28 USC §1332 to provide this Court with additional jurisdiction, and venue is established

at 28 USC §1391(b)(1) as all Defendants

reside in the same district.

## PARTIES

2.      Plaintiff is and at all times of the discrimination based on sexual harassment, was

and is a natural woman living in the State of Nevada, and, as a handicapped person

under the American Disability Act and is entitled to live free from harassment, sexual

demands, grooming by a predator, and discrimination via hostile environment.

Plaintiff is also entitled to equal protection under the law where officers of the State

Court, in whom the public reposes their trust, are involved.

3.      Defendant, Senior Garden Apartments, 1809 and 1813 E. Charleston Blvd., Las

Vegas, Nevada, 89104, is a housing provider which Plaintiff believes and alleges is

authorized under Nevada State law to provide living quarters suitable for habitation free

from sexual harassment, quid pro quo sexual demands, and, hostile environment and

retaliation for reporting said offenses.

4.      Defendant, Russell Ricciardelli, last known address 9154 White Rock Peak Street,

Las Vegas, NV 89113, is a citizen of the United States and a lawful resident of the State

of Nevada, and the owner of the properties listed above at all times during the 20

1 | months the offenses were committed, and, Plaintiff believes and alleges, has the duty

2 | and responsibility to ensure that the property is a safe living quarter for all races, sexes,

3 | and handicapped peoples.

4 | 5.      Defendant, Steven Ramirez, is and at all times of the offenses cited herein,

5 | Plaintiff believes and alleges, is a legal resident of the State of Nevada and a citizen of

6 | the United States, and a resident and/or manager of the Senior Garden Apartments, at

7 | 1813 E. Charleston Blvd., #8, Las Vegas, NV 89104, having been entrusted with carrying

8 | out the duties as prescribed by co-defendant, Ricciardelli, including adhering to the laws

9 | of the State of Nevada and the United States of America as they pertain to ensuring the

10 | health and safety of the tenants.

11 |      6.  DOE #1 had been identified as Edward D. Kania, whose office is at 501 S. 6th

12 | Street, Las Vegas, NV 89101, who is and at all times of the offenses cited herein, was a

13 | legal resident of the State of Nevada and a citizen of the United States, having taken a

14 | sworn oath to uphold the Constitution of the United States and the State of Nevada via

15 | the Nevada State Bar Association, and is thereby authorized to ensure that justice

16 | prevails in the courtrooms of Clark County, Nevada.

17 |      7.  Doe #2 is identified as David F. Brown, whose last known work place was

18 | Clark County Justice Center, 200 Lewis Street, Las Vegas, NV 89101, who is and at all

19 | times of the offenses cited herein, was a legal resident of the State of Nevada and a

20 | citizen of the United States  having taken a sworn oath to uphold the Constitution of the

21 | United States and the State of Nevada via the Nevada State Bar Association, and is

22 | thereby authorized to ensure that justice prevails in the courtrooms of Clark County,

23 | Nevada in a ministerial capacity, i.e., lacking judicial immunity.

24 |      8.  Doe #3 has been identified as Mary Alice Ricciardelli, last known address 9154

25 | White Rock Peak Street, Las Vegas, NV 89113, whom Plaintiff believes and alleges is a

4

1  resident of the State of Nevada and a citizen of the United States, as the lawful spouse

2  of Defendant Russell Ricciardelli, and co-trustee of the Trust which, according to the

3  investigation conducted by the United States Department of Housing and Urban

4  Development,  administers Defendant Senior Garden Apartments;

5          9. Doe #4 has been identified as the Ricciardelli Family Trust, last known address

6  9154 White Rock Peak Street, Las Vegas, NV 89113, holder and administrator of Senior

7  Garden Apartments via Quit Claim Deed #20160914-0001962 identified in the Clark

8  County Recorder's records as "lots 17 and 18 of Lawrence Love Tract, Book 3 of Plats,

9  Page 9 in the Office of the County Recorder, Clark County, Nevada.

10          10. Doe #5 has been identified as Eric R. Newmark, whose office is located at

11  Karsaz Law Firm, 6276 S. Rainbow Blvd. Suite 120, Las Vegas, NV 89118 who is and at all

12  times of the offenses cited herein, was a legal resident of the State of Nevada and a

13  citizen of the United States, having taken a sworn oath to uphold the Constitution of the

14  United States and the State of Nevada via the Nevada State Bar Association, and is

15  thereby authorized to ensure that justice prevails in the courtrooms of Clark County,

16  Nevada

17                                                   **FACTS**

18  Plaintiff alleges as follows:

19          11. The events described herein all occurred in Clark County, Nevada, and fall under

20              the Fair Housing Act of the United States;

21          12. Beginning on or about January 7, AD2016, Plaintiff lived as a neighbor (at first)

22              then as a tenant subject to the constant sexual harassment of Defendant Ramirez

23              once Ramirez became building manager approximately two months later;

24          13. The sexual harassment, including innuendoes that Plaintiff was Ramirez's wife,

25              that Ramirez "didn't have to do that for you":and that Plaintiff was 'cheating' on

Ramirez when Plaintiff spoke to another man on the property or cooked for the then-handyman Les, who was widowed just 3 days before Plaintiff moved in, grabbing Plaintiff and pulling Plaintiff's body into his after demanding 'payment of a hug' for opening a difficult-to-open jar, to pointing to his cheek for a kiss after assisting with another task which Plaintiff was unable to complete unassisted, to rejecting food items as "That's not what I want from you", which continued through the filing of this complaint via the progression from Quid Pro Quo to the Hostile Environment until Defendant Russell Ricciardelli, Defendant Mary Alice Ricciardelli, and Defendant Senior Garden  Apartments hired Defendants KANIA, NEWMARK, and  Newmark to influence Defendant Brown and other judges to silence Plaintiff and seize Plaintiff's property rights;

14. During the months from January 2016 through May 2016, the harassment became unbearable, as Plaintiff realized the 'grooming' of Plaintiff involved Ramirez driving Plaintiff, who is partially blind and does not drive, to run errands, for which Plaintiff showed gratitude by sharing home-cooked meals and baked goods with Defendant Ramirez, until Ramirez began refusing the offerings saying that "that's not what I want" or "I don't want that from you", and repeatedly inquired, upon entering Plaintiff's apartment for a repair "Are you decent?  I hope not" or refusing to permit Plaintiff to watch a presidential debate at Ramirez's apartment unless Plaintiff agreed that Ramirez could "run around naked" while Plaintiff was in Ramirez's apartment;;

15. Plaintiff became aware that the maintenance man Les (and thereafter Billy) were told by Ramirez to not repair anything for Plaintiff, but to tell Plaintiff that Plaintiff had to "go through" Ramirez if she wanted anything repaired;

16. When Plaintiff became aware that the transportation to and from errands ceased because Plaintiff was not cooperating with the invitations to have sex, Plaintiff tried responses other than playing along or joking, and attempted a more serious approach to let Ramirez know his advances were unwanted but that Plaintiff could still be 'friends' by shunting Ramirez's attempts to make Plaintiff feel guilt with texts saying that if Ramirez treated his then-girlfriend Michelle as if she had something above her neck, Ramirez might be able to undo his complaint "she doesn't want to be with me." Plaintiff did not feel sorry that Michelle did not want to be with Ramirez, but tried showing Ramirez that the two had nothing in common, which fell on deaf ears, as Ramirez began suggesting that each time Plaintiff came to his apartment to bring baked goods or a meal, or wanted to watch a TV program, or even look at the new TV Ramirez installed, or his new curtains, Ramirez would be running around naked

17. In late May, Plaintiff was awakened at 2:30 a.m. by Ramirez's voice leaving Gloria's apartment which was directly across the narrow 4-foot sidewalk from Plaintiff's window, and Plaintiff realized that Ramirez's advances were not playful and had the potential for danger.

18. A few days later, Plaintiff asked Defendant R. Ricciardelli if he could find Plaintiff another apartment in the building next door (1809), as Les was still the handyman and Plaintiff's door would not be close to Ramirez's and Ramirez

might forget about her, especially if the incident at Gloria's at 2:30 in the morning meant Ramirez found a willing partner and/or had convinced Michelle to "be with him"

19. On June 1, AD2016, Plaintiff moved to the building next door;

20. While Plaintiff walked with Ricciardelli and Ramirez to the new apartment, Ricciardelli demanded that Plaintiff return the space heater because it belonged to Ricciardelli, to which Plaintiff responded "The heater is in the apartment.  I knew it was yours and I didn't take it.  I don't take what's not mine. "  Ricciardelli glanced at Ramirez who shrugged and said "Where did you leave it?" to which Plaintiff replied "It's near the shower" and heard Ramirez state "I didn't look there" which convinced Plaintiff Ramirez was attempting to smear Plaintiff in Ricciardelli's eyes because the apartment was a one-room studio with all areas visible from the center of the room.

21. The new apartment needed some repairs, but Ramirez would not let Les do them unless Ramirez was around, and when Plaintiff complained that the things that needed addressed were not taken care of and asked Ramirez why, Ramirez retorted "well, you left my harem."  Plaintiff was not looking for an enemy so chose this time (somewhere between June 2 and June 10) to make a special visit to Ramirez in his office where Plaintiff played the 'religion' card, informing Ramirez that Plaintiff, in 1993, took a vow of chastity in church, prior to beginning her missionary post, to remain chaste until she were married, and Ramirez's response was to toss a one-inch metal washer that Plaintiff had found on the floor and placed on the desk prior to sitting down, saying "Here's the ring."

22. After Les left as handyman and Ken failed to repair a drawer correctly, Billy (not a party) assumed the role of maintenance man and became friends with Plaintiff to the point where Billy would do small tasks for Plaintiff, who had fallen on July 5, AD2016, and was now a home-bound patient with limited use of her knees and hands to add to her woes of partial blindness. Billy ran small errands for Plaintiff, and Plaintiff made him a dinner once, and apparently Billy informed Ramirez of that and was told by Ramirez that Billy was not to do any repairs for Plaintiff. Billy also informed Ricciardelli that Marsha was complaining that Ramirez was "hitting on her" all the time, and Ramirez told Defendant Ricciardelli that Billy was the one 'hitting' on Marsha and got Billy fired;

23. Plaintiff elicited the assistance of her social worker, who telephoned Ramirez on numerous occasions, citing the reports from Plaintiff's caretakers who complained of black smoke billowing from the oven, all of which received the same response from Ramirez, that Plaintiff's oven was dirty, leading plaintiff to contact the County Health Inspector who was prohibited from making any determinations regarding oven operations beyond whether or not it turned on;  Ramirez informed Defendant R. Ricciardelli that the Inspector told Ramirez the oven was dirty and that's why it was smoking, which was a blatant lie;

24. Ramirez then blamed Plaintiff for oven knobs melting but when Plaintiff requested the operator's manual from Ricciardelli, in order to discover if the door should be left open a crack when Plaintiff broiled, Ricciardelli refused the request.

25. Each time Plaintiff sent her social worker or nurse or caretaker to Ramirez with a problem Ramirez stayed just this side of 'legal' with the response "I'm working

on it", eliminating Plaintiff's right to withhold rent for non-repair of a necessary item such as air conditioner or oven;

26. On March 3, aD2017 Plaintiff's social worker took Plaintiff to the police department to file a complaint after the one she mailed to them was returned with the message Plaintiff needed to file in person.  Plaintiff was informed that there was no proof that the failure to repair was retaliatory for Plaintiff's not sleeping with Ramirez;

27. Plaintiff sent her caretaker to complain about the oven continuing to smoke and set off the fire alarm and Ramirez told her he was "working on it" or that Plaintiff 'broke it' or 'did something to it to break it';

28. Plaintiff has since learned via two emails from the County Health Department the so-called 'Inspector' was never sent by Clark County and whoever appeared there was an imposter;

29. From that point forward,  Ramirez harassed Plaintiff with mixed messages that suggested repairs were being withheld until such time as Plaintiff succumbed to the unwanted advances, including but not limited to: air conditioner not being repaired through the entire long, hot summer of 2016 and into 2017; Ramirez telling Plaintiff she looked "hot" even though Plaintiff attempted to suggest Ramirez use the word 'younger'; Plaintiff's oven going unusable during the Thanksgiving holiday, the Christmas holiday, until Easter of 2017; Ramirez removing the mesh Ramirez had installed to deter pigeons from roosting on Plaintiff's awning without consulting Plaintiff until Plaintiff took photos of the feces, straw, and feathers at her doorstep and complaining to Defendant

Ricciardelli that the problem was escalating, but Ricciardelli was silent as to why the mesh which had been effective for several months, had surreptitiously been removed; removing the dimmer switch from Plaintiff's wall; reversing the wiring in the bathroom switches and blaming Plaintiff for overloading the circuit then refusing to restore the wires because Ramirez was "working my second job until midnight" in order to compel Plaintiff to live in the dark all evening, except that Plaintiff DID demand that Ricciardelli insist that Ramirez leave his second job and fix it; Ramirez breaking another kitchen drawer, replacing the ceiling fan which Plaintiff did not find malfunctioning but merely needed tightening, but which 'story' enable Ramirez to tell Ricciardelli that Plaintiff unnecessarily demanded a new fan to create an unnecessary expense; Ramirez leaving the old fan parts and the new fan parts in the middle of the floor compelling Plaintiff and her nurse to trip over them for 4-5 days while Ramirez lied that the 'new fan was defective and he was going to have to return it but couldn't get to it right away, causing Plaintiff and her nurse to stumble due to lack of space;  Ramirez and Ricciardelli ignoring letters from Plaintiff's occupational therapist, physical therapist, caretaker, nurse, and social worker regarding the excessive temperature of the apartment for over 15 months; sending Plaintiff a text that Ramirez's A/C unit was doing the same thing Plaintiff's was doing but the only way Plaintiff would get a new unit was if hers died (Plaintiff, believing it unethical to 'help' the A/C unit 'die' would not stoop so low as to tamper with the unit, hoping the letters would induce Ramirez and Ricciardelli to act honorably, but instead they sent a 'fake' inspector to pretend Plaintiff was the fault; Ramirez went out that

very night and bought himself a new unit without asking Plaintiff if she wanted/needed one in spite of the fact that the text clearly stated Ramirez's A/C wasn't yet completely dead; calling Plaintiff "full of sh\*\*" and telling Plaintiff to "kiss my arse" in front of Plaintiff's caretaker (who was appalled at such behavior from a repairman/building manager); Ramirez texting Plaintiff that "Michelle didn't want to be with me" so Plaintiff was 'free' to be his girlfriend; Ramirez texting Plaintiff that Plaintiff would have to agree to allow Ramirez to "run around naked' if Plaintiff would be permitted to watch the presidential debates at Ramirez's house; warning Plaintiff to not look in Ramirez's windows because he was always 'running around naked';  and, finally, sending Plaintiff a note that if the oven knob melted once more time Plaintiff would have to pay to replace and install it, in spite of the fact that (a) other tenants were not threatened with paying for such trivial items and (b) Defendant Ricciardelli bought the same exact knob that melted the first time instead of using common sense and purchasing a more sturdy one or repairing the oven and refusing to provide the operating manual to Plaintiff!;

30. Plaintiff heard Billy Hernandez, another handyman (not a party) comment that another tenant, Marsha, complained that Ramirez constantly 'hit on her' and that Ramirez said things in front of Donald (another tenant not a party) and R. Ricciardelli which "were so vile that I (Hernandez) cannot repeat them" leading Plaintiff to believe that Ramirez besmirched Plaintiff to Ricciardelli and other tenants to drive Plaintiff out;

31. On April 10, AD2017, Plaintiff wrote all of the incidents of sexual harassment perpetrated by Ramirez in a letter to Defendant Ricciardelli, and handed it to her social worker to drop in the mail after he dropped her off at a medical appointment for therapy because of the stress of living without A/C and the continual harassment of Ramirez and the apparent indifference of Ricciardelli. When Plaintiff returned to the property, both Defendants were outside in the parking lot and Defendant Ricciardelli called Plaintiff over and informed Plaintiff that Plaintiff was to go to Ramirez with any questions, requests, or complaints and Plaintiff agreed, realizing there was no sense trying to squelch Ramirez's gloating by saying that a letter had just been put in the mail when Ricciardelli emphatically had just turned a deaf ear;

32. On or about April 14, AD2017, Plaintiff insisted on speaking with Ricciardelli about (A) the response to the letter enumerating the sexual harassment, and (B) the removal of the mesh and the oven and Ramirez texted Plaintiff that Ricciardelli would be on the property that day and if Plaintiff wanted to see him to come to the office;

33. At approximately 10 a.m., Plaintiff met with Ricciardelli whose first words were "Steven made some mistakes, but we're all friends here and there's no need to mail anything to my house. We're all adults here and there's no need for mediation or courts. We can always talk things out", establishing a pattern and practice of turning a deaf ear to women who complain about Ricciardelli's abusive 'man-servant', showing Plaintiff that Plaintiff had no remedy except at the hands of Ramirez, which meant giving in to the unwanted advances because

Ramirez now had ALL the power over Plaintiff and even after Ricciardelli READ the full litany of egregious acts, didn't care one whit for Plaintiff's plight, making Plaintiff seriously consider whether Ricciardelli would reap the benefits Ramirez might solicit for them both;

34. On July 12, AD2017, a short time after Plaintiff requested to view the owner's manual for the oven, Defendant Ricciardelli had Plaintiff served with a NO CAUSE eviction notice;

35. On July 13, AD2017, Plaintiff filed a complaint with HUD in the San Francisco office and, Plaintiff was interviewed on or about July 27, AD2017, when an investigator telephoned Plaintiff for an interview which lasted one hour and fifteen minutes, during which time, Laura Uribe informed Plaintiff that Plaintiff would receive a letter informing Plaintiff of the decision to deny the claim or a complaint for Plaintiff to sign and return;

36. On August 4, AD 2017, Ramirez texted Plaintiff asking if Plaintiff intended to bring the rent over that morning, which raised Plaintiff's suspicions that Ramirez might steal the money since it was not due as Plaintiff was technically 'kicked out', but which causing such emotional stress waiting for the 'knock on the door', that Plaintiff has elected to act outside the bureaucracy since Plaintiff could not afford an eviction on her record, as it is difficult enough to try to move while handicapped and without the funds to pay first and last month's rent since Defendants have given no indication what will become of the cleaning deposit Plaintiff left in Ricciardelli's possession.

37. Plaintiff filed an answer using the court-approved Answer Form and checked the option which selected 'Retaliation' as a defense to the 'No Cause' complaint;

38. Hearing Master David F. Brown (Doe defendant #2) set a hearing for September 1, AD2017 and acknowledged this federal action by holding up the complaint Plaintiff filed into the record to demonstrate that facts WERE in dispute.  Brown commented to Ricciardelli, also present, that "These are serious allegations if true."  Ricciardelli, unwitting admitted there were facts in dispute by shouting "They're all lies" which was itself a lie since Ricciardelli was not present 24/7 to know what transpired and had no personal knowledge of acts Ramirez committed in secret;

39. Brown ruled denying the summary eviction which adhered to the limited jurisdiction of the court in that Brown's only authority was to determine if facts were in dispute.  Ricciardelli railed at the adverse ruling and cried out "Then I'm going to sue her for failure to pay rent" to which Brown asked "Did you ask her for rent?" and Ricciardelli stated "No.  I just want her out."  After spreading negative slurs and complaining that Ricciardelli knew Brown to be a judge who wouldn't make a landlord keep a tenant the landlord didn't want, Ricciardelli asked for a different ruling.  Brown asked "Where is your witness Ramirez and where is the report from the County Health Inspector you said proved she is lying about the repair of the air conditioner being her fault?"  Ricciardelli shrugged his shoulders and admitted he did not have Ramirez with him and the 'report' was "at home."

40. Ricciardelli telegraphed he was going to file another suit, this time for failure to pay rent. Brown, for an unknown reason, inaccurately told Ricciardelli "Retaliation is not a defense to the non-payment of rent claim." This was inaccurate on two counts, which Brown knew or should have known because (a) the legislature did provide retaliation as an option to the non-payment of rent issue, and (b) the Nevada Supreme Court precluded a second filing on the same claim, as well as the same issue. Brown did not notify Ricciardelli that the second action could not be filed in this court, although Brown did inform Ricciardelli "you can file an action in a formal eviction court."

41. Brown eventually, for some unknown reason, capitulated to Ricciardelli's whining, and set a hearing for September 29, AD2017 and directed Ricciardelli to bring Ramirez and the report from the health inspector, in spite of Brown knowing the best Ricciardelli could do was firmly establish a controversy existed because Ramirez would create a 'he-said/she said' scenario, and a report saying Plaintiff did not know how to use the oven and the A/C was not malfunctioning would be contradicted by the evidence of Plaintiff's federal complaint and the five letters from Plaintiff's health care professionals who had personal knowledge that the A/C was not working.

42. On September 2, AD2017, Plaintiff mailed a certified 'Habitability Notice' to Ricciardelli, stating that the premises were uninhabitable on three grounds: (a) malfunctioning air conditioner, unusable oven, and, hostile environment, which authorized the lawful withholding of rent until habitability was restored;

43. On or about September 6, AD2017, Plaintiff was served with a 'Notice to Pay Rent or Quit;'

44. Plaintiff spotted the name Edward Kania as an attorney representing Ricciardelli in the second action, which Plaintiff noted because Plaintiff is informed and believes that Ricciardelli handled all of his evictions himself;

45. Plaintiff answered using the court-approved Answer Form and found the same 'Retaliation' option included. Plaintiff selected the option and this time included a copy of the complaint HUD initiated as evidence that facts were in dispute. Plaintiff cautioned Brown that Ricciardelli was attempting an end-around of the adverse ruling (Plaintiff did not yet learn of *Five Star Capital v. Ruby* the NV Supreme Court case delineating the specifications regarding both claim and issue preclusion) and requested three times in the Answer to consolidate the hearing with the hearing Brown set on September 1st to allow Ricciardelli to reverse the denial of the summary eviction. Brown set a hearing for September 21 which turned out to be the first day of a holy observance for Plaintiff. Plaintiff received the hearing notice on September 19, AD2017 and the same day filed a Motion for a Continuance along with another document titled "Inability to Attend Hearing." Twice more Plaintiff moved for a consolidation of the hearings, clearly specifying in both filings that the hearing be conducted on the 29th day of September since the issues and the claims were the same between the same two parties [the only issue Brown could entertain was 'are there facts in dispute' and the only issue Plaintiff could raise was 'There are facts in dispute.'] and the same evidence produced would apply, thereby avoiding duplication of court resources as well as

check-mating the attempt to circumvent the duty to produce Ramirez and the health inspector's report on the 29th.

46. On September 27, AD2018, Plaintiff was putting the final touches on a declaratory judgment action in the Clark County District Court seeking a determination as to Ricciardelli's interpretation of the law regarding hostile environment being an element requiring correction before rent was due, since it appeared to Plaintiff that no legislature could compel a tenant to pay rent for being abused. Plaintiff was disrupted by a suspicious movement at her door. Plaintiff found a 24-hours notice to vacate based on an order Brown issued on September 25, AD2017 at a hearing Brown conducted without noticing Plaintiff;

47. On September 27, AD2017. Plaintiff filed the declaratory judgment and a rough request for injunctive relief, as well as a motion to set aside the judgment based on denial of due process for lack of notice of the hearing;

48. On September 28, AD1917, Plaintiff, a 75-year old partially blind, physically handicapped elderly woman was forcibly evicted and compelled to live without her medical aids, in several 'group' homes over the next thirty days where Plaintiff was subjected to further abuse by drug addicts, racially prejudiced owners who charged outrageous rents, and without cooking utensils or transportation to find outside food sources;

49. On September 29, AD2017, Plaintiff appeared for the hearing set for the 29th before Brown and heard Brown reaffirm his September 1st ruling, denying Ricciardelli summary eviction;

50. On September 29, AD2017, Plaintiff asked Brown where to obtain a record of what occurred on September 25, or if Brown had it available, and Brown mumbled that Plaintiff could find the record in the Clerk's Office. Plaintiff discovered the following with the help of a deputy clerk named Michael Johnson (not a party) (a) Brown stepped down off the bench and acted like a litigant to the detriment of Plaintiff by altering Plaintiff's motion for a continuance from the date Plaintiff's motion specified, i.e., September 29th to September 25th; (b) Brown falsified the court order Brown filed into the record by misnaming the motion for a continuance, a motion for telephonic appearance, misleading Plaintiff to think another party sought the motion; (c) Brown falsified a court document Brown filed into the record by using the words "the motion as filed herein" for the motion Brown allegedly 'approved' when no such motion exists anywhere in the file which sought a continuance to the 25th of September; (d) Brown knowingly exceeded his restricted jurisdiction in his ministerial capacity authorized only to determine whether or not facts were in dispute and refer matters where facts were in dispute to the formal eviction process, usurping powers not delegated to Brown but reserved for judicial officers; (e) agreed to hear a second action Brown, an eviction specialist, knew was precluded by the 2009 Nevada Supreme Court ruling *Five Star Capital v Ruby* and Brown came onto the bench after that date; and (f) Brown did not send Plaintiff a notice of the hearing date so Plaintiff could appear, as reflected by the record in both summary eviction actions where notices to appear were sent according to the law and due

process mandates, establishing Brown as a willing participant to conduct a 'secret' hearing as in the old days of the Star Chambers;

51. After perusing the court record, Plaintiff noticed Edward Kania was listed in this second action as attorney of record who was present with Ricciardelli at the unnoticed hearing conducted by Brown;

52. Edward Kania is a learned attorney authorized by the State Bar Association to handle legal matters (specialty: evictions) who stood by and watched and/or assisted Brown and Ricciardelli, without objection and/or insistence that adherence to the law be honored, by (a) allowing Brown to step down off the bench and act like a litigant to the detriment of Plaintiff by altering Plaintiff's motion for a continuance from the date Plaintiff's motion specified, i.e., September 29th to September 25th since Kania was attorney of record and had access to every document Plaintiff mailed to Kania's client, Ricciardelli; (b) condoning Brown's falsification of the court order Brown filed into the record by misnaming the motion for a continuance, a motion for telephonic appearance, misleading Plaintiff to think another party sought the motion, and Kania's client, Ricciardelli was the only other party to the action; (c) permitting Brown to falsify a court document Brown filed into the record by using the words "the motion as filed herein" for the motion Brown allegedly 'approved' when no such motion exists anywhere in the file seeking a continuance to the 25th of September, and Kania knew Kania never filed such a document on behalf of Kania's client, Ricciardelli; (d) observing Brown exceed Brown's restricted jurisdiction in his ministerial capacity authorized only to determine whether or not facts were in

dispute and refer matters where facts were in dispute to the formal eviction process, usurping powers not delegated to Brown who is not a judicial officer and Kania, who is not permitted in his role to look the other way when an injustice is done, is an officer of the court, and (e) accepted the fact that neither Kania nor Brown sent Plaintiff a notice of the hearing date so Plaintiff could appear, as reflected by the record in both summary eviction actions where notices to appear were sent according to the law and due process mandates, establishing Brown and Kania as willing participants to conduct a 'secret' hearing as in the old days of the Star Chambers;

53. On or about October 9, AD2017, Plaintiff IFP status for the appeal of the summary eviction was approved.  The ruling denied the appeal but remanded the matter back to Brown's court for further proceedings.

54. Plaintiff, unsure as to whose court the ball was in, made two attempts to prompt the further proceedings, the first by seeking disqualification of Brown or in the alternative a voluntary recusal by Brown, and the second, a Motion for Summary Judgment for Plaintiff on the grounds that the only other way a summary eviction could go would be to have it reversed in Plaintiff's favor.  By this time. Plaintiff had discovered the *Five Star v Ruby* case demonstrating Ricciardelli and his attorney, Kania, had no valid judgment due to the preclusionary rule, regardless of whether Plaintiff appeared or not, since, as the Nevada Supreme Court found, the action was null and void *ab initio*.  Brown denied both motions before the ink was dry and Kania remained silent to the motions, in effect, consenting to the actions of Brown who ruled without an objection or protest from Kania.

55. Plaintiff then pursued the injunctive relief and the declaratory judgment actions, only to discover Kania deceived both judges with arguments in a Motion for Summary Judgment that shocks the conscience since it silenced Plaintiff and obstructed Plaintiff's due process hearing: (a) Kania somehow convinced two District Court judges that the injunctive relief and the DJ actions were filed as an appeal of the appeal, notwithstanding the fact that Plaintiff was not unhappy with the remand, believing Plaintiff would get the due process hearing Plaintiff was denied through the lack of notice, an argument Kania knew or should have known was absurd on its face since September comes before October on every calendar on the face of the Earth and even Ricciardelli could have told him that; and, (b) Kania proclaimed repeatedly that Brown's ruling for summary eviction was UPHELD in spite of the fact that both Brown and Kania know remand does not mean upheld and that further proceedings were required;

56. Kania's deliberate misrepresentations to both courts caused Plaintiff to lose to Kania's summary judgment motions, and both of those matters are currently on appeal to the Nevada Supreme Court based upon that court's *Five Star* ruling;

57. The wily manner Kania used to influence yet another judges was to 'employ' Defendant Newmark to spread the absurd arguments to the judge in the declaratory judgment action, evidenced by the fact that the Motion for Summary Judgment which Kania used in the injunctive relief action was used word for word by Newmark in the declaratory judgment, notwithstanding that both KANIA and NEWMARK knew the preventing a party from 'speaking' in an injunctive relief and declaratory judgment action is obstruction of Plaintiff's right to petition

for redress, speak freely without having to defend against ridiculous arguments that the October appellate ruling prompted Plaintiff to file her September actions, were attempts to enforce a void judgment which illegally seized Plaintiff's property rights, and, denied Plaintiff due process in a court of law.

58. Newmark's latest act to deprive Plaintiff of due process came from the Clark County Sheriff's Civil Division in the form or an affidavit of non-service, dated March 19, AD2018, wherein Newmark, an attorney representing a client and bound by oath to conduct a fair and impartial defense which includes protecting the rights of all parties under the laws of the State, refused service of Plaintiff's legal service. The Sheriff's comments on the document demonstrate the deliberate attempt to thwart Plaintiff's due process rights in that the Sheriff wrote: "Spoke to Lacy Shamblin, legal assistant (on March 16) who consulted with someone via phone <u>while I was there</u>, who told her not to accept the papers."

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (by Plaintiff for Sexual Harassment - Quid Pro Quo)

59. Plaintiff incorporates herein by reference all of the above allegations in paragraphs 1 through 58 as if fully set forth at this point;

60. The sexual harassment that extended over a period of 20 months is the proximate cause of harm to Plaintiff by Defendants Ramirez, Ricciardelli, and Senior Garden Apartments by knowingly allowing such conduct when there is a duty to prevent the unlawful and harmful acts that resulted in injury to the

1    Plaintiff under the Quid Pro Quo tenet of the Fair Housing Act, through the

2    intentional infliction of emotional distress and discrimination on the basis of sex;

3    61. The wrongful conduct as herein alleged of Defendants, and all of them who

4    allowed the enforcement of a void judgment which covertly 'condoned' the

5    violation of State laws prohibiting retaliatory evictions for reporting sexual

6    harassment, was malicious, oppressive, and fraudulent in nature;  Defendants

7    engaged in the acts either directly or through indifference and neglect, all the

8    way through the attempt to evict Plaintiff to cover up their scheme of inducing

9    women to the property to be a part of a 'harem'.  Each engaged in the harmful

10   conduct with the intent to cause harm to the Plaintiff with a conscious disregard

11   for Plaintiff's rights or religious beliefs, subjecting Plaintiff to cruel and unjust

12   hardship. Ramirez acted with an evil and fraudulent motive, fully condoned by

13   Ricciardelli and his two attorneys, KANIA, NEWMARK, and  Newmark, as well as

14   his wife who looked the other way, and the Trust who failed to protect the

15   property Senior Garden Apartments within its protection, both with the intent to

16   vex, injure, annoy, and strip Plaintiff of her rights and with the conscious

17   disregard for the law mandating habitable living quarters regardless of sex.

18   Defendants' actions and/or failure to act were despicable, reprehensible, and in

19   blatant violation of the law regarding providing habitable premises as are

20   provided to other tenants who never miss a rent payment, acting with extreme

21   indifference to Plaintiff's right to petition the landlord for remedy directly,

22   entitling Plaintiff to an award of punitive and exemplary damages from

23   Defendants.

24                                    **SECOND CAUSE OF ACTION**

25                      **(by Plaintiff for Sexual Harassment  - Hostile Environment)**

24

62. Plaintiff incorporates herein by reference all of the above allegations in paragraphs 1 through 61 as if fully set at this point;

63. The sexual harassment element invoking the hostile environment element extended over a period of 18 months is the proximate cause of harm to Plaintiff by Defendants Ramirez, Ricciardelli, and Senior Garden Apartments by knowingly allowing and encouraging such conduct when there is a duty to prevent the unlawful and harmful acts that resulted in injury to the Plaintiff under the Fair Housing Act, through the intentional infliction of emotional distress and discrimination on the basis of sex;

64. The wrongful conduct as herein alleged of Defendants, and all of them, was malicious, oppressive, and fraudulent in nature; Defendants engaged in the acts either directly or through indifference and neglect, all the way through the attempt to evict Plaintiff and use the legal system to cover up their scheme of inducing women to the property to be a part of a 'harem'. Each engaged in the harmful conduct with the intent to cause harm to the Plaintiff with a conscious disregard for Plaintiff's rights to be treated as all other tenants who seek repairs, particularly when it involves air conditioning in 100+ degree temperatures, health care professionals insisting that Plaintiff's living situation is unbearable, and subjecting caretakers employed by the State Medicaid agency also being subjected to excessive heat in the apartment, thick black smoke from a faulty oven, improperly cooked foods, and extra work to clean or cook to make up for the deficiencies, subjecting Plaintiff to cruel and unjust hardship. Ramirez acted with an evil and fraudulent motive, fully condoned by both Ricciardellis and their Trust who engaged attorneys to pervert the justice system through lies and misrepresentations, both with the intent to vex, injure, annoy, and strip Plaintiff

1    of her rights and with the conscious disregard for the law mandating habitable

2    living quarters regardless of sex.   Defendants' actions and/or failure to act were

3    despicable, reprehensible, and in blatant violation of the law regarding providing

4    habitable premises as are provided to other tenants who never miss a rent

5    payment, acting with extreme indifference to Plaintiff's right to petition the

6    landlord for remedy directly, and total disregard for Plaintiff's rights to property

7    being safe from illegal seizure under color of law, Plaintiff's First and Fifth and

8    Fourteenth Amendment rights to due process, speaking out for redress to HUD,

9    and equal protection under the law, entitling Plaintiff to an award of punitive

10   and exemplary damages from Defendants.

11                          **THIRD CAUSE OF ACTION**

12                          (by Plaintiff for Discrimination)

13   65. Plaintiff incorporates herein by reference all of the above allegations in

14       paragraphs 1 through 64 as if fully set forth at this point;

15   66. The sexual harassment element invoking discrimination extended over a period

16       of 26 months is the proximate cause of harm to Plaintiff by Defendants Ramirez,

17       both Ricciardellis and their Trust, and Senior Garden Apartments, along with the

18       two attorneys, KANIA and NEWMARK, who influenced and/or covered up the

19       criminal acts of Defendant Brown by knowingly allowing and encouraging such

20       conduct when there is a duty to prevent the unlawful and harmful acts that

21       resulted in injury to the Plaintiff under the Fair Housing Act, through the

22       intentional infliction of emotional distress and discrimination on the basis of sex

23       and Plaintiff's handicapped situation, when a different set of laws was applied in

24       order to deprive Plaintiff of the right to speak out for redress, protect a lawful

25

1    and legal property right from illegal seizure, denial of due process, and, equal

2    protection under the law;

3   67. The wrongful conduct as herein alleged of Defendants Senior Gardens, Russell

4    and Mary Alice Ricciardelli, Steven Ramirez, Edward Kania, David Brown and Eric

5    Newmark was malicious, oppressive, and fraudulent in nature;  Defendants

6    engaged in the acts either directly or through indifference and neglect, all the

7    way through the attempt to evict Plaintiff to cover up their scheme of inducing

8    women to the property to be a part of a 'harem'.  Each engaged in the harmful

9    conduct with the intent to cause harm to the Plaintiff with a conscious disregard

10    for Plaintiff's rights to be treated as all other tenants who seek the peaceful

11    enjoyment of their homes and ask for reasonable repairs, particularly when it

12    involves air conditioning in 100+ degree temperatures for months on end, health

13    care professionals insisting that Plaintiff's living situation is unbearable, and

14    subjecting caretakers employed by the State Medicaid agency also being

15    subjected to excessive hear in the apartment, thick black smoke from a faulty

16    oven, improperly cooked foods, and extra work to clean or cook to make up for

17    the deficiencies, subjecting Plaintiff to cruel and unjust hardship. Ramirez acted

18    with an evil and fraudulent motive, fully condoned by Ricciardelli, both with the

19    intent to vex, injure, annoy, and strip Plaintiff of her rights and with the

20    conscious disregard for the law mandating habitable living quarters regardless of

21    sex.  Defendants' actions and/or failure to act were despicable, reprehensible,

22    and in blatant violation of the law regarding discrimination, as evidenced by the

23    refusal to evict other tenants who "went off their meds" causing major

24    disruptions and property damage, who brought children or pets onto the

25    property contrary to the rules, and/or who sold drugs, threatened others with

1   murder and/or sent gang members to intimidate Plaintiff by bashing in her door

2   with a heavy object, and covering up for such intimidating behavior when

3   Plaintiff attempted county mediation get involved. To throw Plaintiff out under a

4   NO CAUSE eviction is a fraud and discriminatory because Plaintiff would not

5   sleep with the building manager.  Plaintiff has no idea the degree of involvement

6   Defendant Ricciardelli would assume if Plaintiff HAD agreed to exchange sexual

7   favors for repairs, but to lead the NO CAUSE eviction charge suggests something

8   despicable either way since Ricciardelli never once accused Plaintiff of violating

9   the lease or the house rules.  Defendants acted with extreme indifference to

10  Plaintiff's right to petition the landlord for remedy directly, entitling Plaintiff to

11  an award of punitive and exemplary damages from Defendants.

12  68. Said wrongful conduct was further exacerbated by Ricciardelli when Ricciardelli,

13  an experienced landlord competent in conducting evictions without an attorney,

14  hired an attorney for this particular action against Plaintiff for the sole purpose

15  of defeating the law prohibiting illegal seizure of property rights, receiving due

16  process, speaking out for redress, and, equal protection under the law.  It is

17  discriminatory to abuse the courts against one believed to be so handicapped

18  that she (Plaintiff) would not know how to respond but would merely accept the

19  wrongful eviction unjustly obtained by fraud and deceit perpetuated and

20  perpetuated by Defendants Brown, Kania, and Newmark.  It is discriminatory to

21  apply a different set of standards to a party presumed to be as mentally

22  handicapped as physically handicapped, and Ricciardelli, KANIA, NEWMARK, and

23  Brown knew the law (via the *Five Star v Ruby* Nevada Supreme Court case)

24  prohibited using a second action against Plaintiff.  In addition, it is discriminatory

25  to influence a judge, whether it be Brown to alter the date in Plaintiff's motion

as if Brown were a litigant or someone's attorney in the action, change the name

of the motion to obfuscate which motion was granted, falsify a court record

claiming the "motion as filed herein" was approved when no such motion exists,

conduct an unnoticed hearing, rule on facts while in his ministerial capacity, and,

refuse to obey the remand mandate from the appellate court, for want of due

process is a factor in discrimination when it comes to the law and equal

protection under the law.  Here you have three Defendants who not only know

the law, but are sworn officers of the court authorized by the State Bar

Association notwithstanding the fact that one of them is in a ministerial and not

a judicial capacity.  It is discriminatory to abuse court process against one litigant

in favor of another, violating State and U.S. Constitution prohibitions.  It is

discriminatory when a landlord finds two attorneys and a judge willing to

circumvent the law by feigning a valid judgment when the action in which the

judgment was based was an *ultra vires* act.  Color of law against a layman,

committed by three government agents is discriminatory and that betrayal of

trust which Plaintiff suffered far exceeds the discrimination Ricciardelli

demonstrated when throwing Plaintiff, a handicapped elderly woman, into the

streets where predators took advantage of her financially by terrorizing her.

Injustice in and of itself is discriminatory on its face, especially when it is

perpetrated and perpetuated by officers of the court who violated the First,

Fourth, Fifth, and Fourteenth Amendments to the Constitution, and the State

Constitutional provisions on the same exact protected rights.  It is the heart and

soul of separate and not equal under the law.  Collusion to conspire is

discriminatory and when the court system is utilized, the discrimination is

intolerable for even the Nevada Revised Statutes in Chapter 47 (specifically at

1   sections 47.240 and 47.250 reveal how conclusive presumptions and arguable

2   presumptions promote the fact that a court decision is presumed accurate and

3   to challenge it is difficult if not impossible.  Ricciardelli knew the only way

4   Ricciardelli could prevail would be to pervert the justice system in a set up which,

5   by nature had to discriminate against a trusting believer in the honor of the

6   system, having taught honor and dishonor workshops around the world for 11

7   years.  Plaintiff was discriminated against the minute Ricciardelli found Kania (an

8   attorney) and Brown (a hearing master) in ministerial capacity who had no

9   authority to rule when facts were in dispute, and later Newmark (an attorney) all

10  willing to proceed unlawfully because of Kania's silent acquiescence.

11  **FOURTH CAUSE OF ACTION**

12  (by Plaintiff for intentional infliction of emotional distress by all Defendants)

13  69. Plaintiff  incorporates herein by reference all of the above allegations in

14  paragraphs 1  through 68 as if fully set forth at this  point;

15  70. The actions of all Defendants in sexual harassment on a quid pro quo basis, for

16  sexual harassment on a hostile environment basis, for discrimination in the

17  harassment, refusal to repair, and eviction, based on Plaintiff's sex, and for

18  intentional infliction of emotional distress, constitutes extreme and outrageous

19  conduct with the intention of causing or the reckless disregard of the probability

20  of causing emotional distress, especially when deliberately turning a deaf ear to

21  the horrendous suffering to which Plaintiff would be subjected whether 'giving

22  in' or not.

23  71.  The conduct of Ramirez, Ricciardelli, Kania, and Newmark herein set forth was

24  odious, perverse and outrageous. Not only were the acts of sexual perversity

25  unwelcome by Plaintiff, but they were willful, wanton, reckless, intentional,

persistent and continuous during the 20+ months Plaintiff tried to rectify the problem, but they were condoned by R. Ricciardelli as mere 'mistakes.' The filing of dual lawsuits to evict Plaintiff without being heard, by R. Ricciardelli was also odious, perverse and outrageous, and were exacerbated by Kania and Newmark who, as officers of the court, understood the grievous effects perverting the truth and the law in a public record and to two judges in open court can have on a litigant who trusted the 'system' and its officers and spent eleven years trying to encourage people to trust the system.

72. Ramirez's sexual advances, assaults upon of Plaintiff' person, and his constant blaming Plaintiff for the broken items and denying repairs of necessary items were extreme, intentional, and caused Plaintiff severe emotional distress. The filing of the second unlawful lawsuit and the cover-up of Ramirez's and Ricciardelli's abuse of the courts by Kania and Newmark defile the legal system both attorneys swore to uphold, making a mockery of their roles to protect justice for all and giving a bad name to those in the legal profession which Plaintiff cherished until these events demonstrated that the oath doesn't mean much to 'esquires' willing to take money to subvert the truth and the law.

73. These actions were so outrageous in character, and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, especially one which flourishes as a nation of laws.

74. Defendants inflicted egregious emotional distress on Plaintiff who experienced persistent anxiety each time Plaintiff heard KANIA and NEWMARK propound the preposterous theories antithetical to all good faith proceedings, including but not limited to such absurd notions as: (a) the October appellate decision was unfavorable to Plaintiff when a remanded action would have made up for the unnoticed hearing of which Defendants' actions deprived Plaintiff; (b) the appellate decision UPHELD Brown's ruling when the matter was REMANDED for further proceedings, a far cry from 'upheld,' which made trying to argue against an attorney (presumed believable over a layman) causing such emotional distress that Plaintiff loses her voice when attempting to talk about it, even choking up in court when the District Court judges bought the ridiculous argument and losing her voice completely during therapy sessions trying to get Plaintiff to discuss the unbelievably corrupt turn of events; and, (c) creating a level of anxiety because no one believes her over the 'learned attorneys' that the injunction and the DJ were filed in September and could not possibly have been an appeal of an appeal since the appeal did not manifest until October.  Plaintiff is being treated now via homeopathic medicines for nightmares because the therapist said there was no technique to relieve bad dreams which Plaintiff has about Ricciardelli and Ramirez waiting in Plaintiff's bed for her to return home, causing Plaintiff to wake up in night sweats.

75. Because of Defendants acts or failures to act, Plaintiff suffers severe and enduring emotional distress which is caused by Defendants.  The behaviors of Defendants are egregious and outrageous because Defendants abused positions of trust, that is of a landlord to whom rent was meticulously paid and his agent entrusted with the overall care of Plaintiff who had strict restrictions on who

1  Plaintiff could call for help, then enlisted parties whom Plaintiff had learned to

2  trust to deliver justice, creating horrendous nightmares about pending sexual

3  abuse and the inability to speak when prompted to discuss the betrayal of those

4  attorneys authorized to work in the courtroom for the purpose of dispensing

5  justice. This is the equivalent of Plaintiff's own country usurping powers over

6  Plaintiff which is the equivalent of oppression. These acts were exacerbated

7  when Ricciardelli insisted (1) that Plaintiff take every issue to Ramirez EVEN

8  AFTER Ricciardelli KNEW OF PLAINTIFF'S PLIGHT,  (2) there was no need for

9  mediation or courts since "We're all adults here and can always talk things out,"

10  (3) hiring two attorneys who are a specialists in evictions yet who willingly and

11  knowingly perverted justice and their oaths of office for the benefit of their

12  client, not the people of the state who expected KANIA, NEWMARK and Brown

13  to play by the rules to obtain a FAIR outcome, not one pre-determined to favor

14  Kania's and Newmark's client, especially since the entire judgment emanated

15  from a second bite of the apple precluded by the State Supreme Court, which

16  Brown and KANIA and NEWMARK defiled for profit and with the reckless

17  disregard of Plaintiff's health and Constitutionally protected rights under the

18  First, Fourth, Fifth, and Fourteenth Articles in Amendment. The acts of

19  perverting justice by exceeding jurisdiction granted to Brown, altering a litigant's

20  motion without permission or knowledge, conducting a 'secret' Star Chambers

21  hearing, all are extreme and outrageous conduct designed to inflict emotional

22  distress in the hopes Plaintiff would be frightened off. It is pathetic to think that

23  grown men, one in a black robe, would consider assaulting the very rights each

24  swore to uphold via a solemn oath of office. To be so betrayed causes an anxiety

25  so deep Plaintiff must work through depression and thoughts of hopelessness

1    that sound exactly like the 'swamp' some legislators now speak of, for these men
2    have desecrated Plaintiff's entire life's work, i.e., to teach people how to
3    navigate the legal system which is their for their own good.  Plaintiff is now
4    eating her words from her workshops where she tried to convince people to
5    trust the justice system.  When the very foundation of one's life is thrown into a
6    major upheaval, nightmares and night sweats are symptoms of a creeping
7    depression that grows with each passing day for no one would listen to a
8    layman.  The degree of betrayal caused physical repercussions to Plaintiff as well
9    as heightened fear and emotional stress, which Ricciardelli knew or should have
10   known had to be the result of sending the hen back to the fox (Ramirez), and
11   which Ricciardelli, Kania, Newmark, and Brown knew or should have know would
12   cause such a sense of hopelessness and frustration in the foundations of society,
13   ergo, justice for all, that Plaintiff would curl up and never be heard from again.
14   The overwhelming sense of futility in fighting city hall because one man wears a
15   black robe and the others have the title Esquire behind their names resulted in
16   Plaintiff's seeking the liquid remedies from the homeopath so as to avoid
17   depressing thoughts that Plaintiff's life's work (teaching that there is justice
18   through honor) would not be a total sham.  Ricciardelli knew Plaintiff was
19   susceptible to harm because of Plaintiff's partial blindness, recent injuries to her
20   legs and hands, and financial status, and passed this information on to KANIA.
21   NEWMARK and Brown that Plaintiff was an easy mark, a patsy, a  useless eater
22   who would be driven away easily. Ricciardelli  willingly and knowingly placed
23   Plaintiff in the hands of an abuser, one whom Ricciardelli claimed "made some
24   mistakes", while fully aware that Plaintiff cannot move easily, subjecting Plaintiff
25   to a degree of stress that has major repercussions unless Plaintiff gives in to both

men.  Then Ricciardelli placed Plaintiff in the hands of unscrupulous officers of the court whose actions will now finally have to face the scrutiny of the federal judiciary and a jury of their peers not so likely to 'buy' into the story that October comes before September or that 'remand' means 'upheld.'

76. To tell Plaintiff that Plaintiff has no other remedy other than through the hands of Ramirez, literally, is cruel and perhaps even vicariously satisfying to Ricciardelli, who is not so naïve as to think that the 2;30 a.m. sighting of Ramirez leaving Gloria's apartment, or Ramirez's 'hitting' on Marsha are innocuous anomalies and more 'mistakes.'  To ask Plaintiff to accept the ruling of a second unauthorized action which resulted in a totally different ruling from one based on the same claim and same issue, is insulting and demeaning.  Furthermore, Ricciardelli acted unreasonably and intentionally with the recognition that his acts and failure to cure were likely to result in Plaintiff's emotional distress, nightmares, night sweats, and inability to vocalize the horrendous events, even during therapy.

77. The wrongful conduct of Defendants as herein alleged was malicious and oppressive and fraudulent in nature, especially since the abuse of the legal system is not one most laymen can foresee.  The shock that such audacity engenders, particularly in one so dedicated to espousing the wisdom and discernment of the Founding Forefathers in establishing a system with inherent checks and balances, was predictable and Defendants knew Plaintiff spent most of her adult life ensuring justice truly was 'for all.'  Defendants, and all of them, engaged in the above-described wrongful acts with the full knowledge that harm, one way or the other, would come to Plaintiff who was anticipating a fair and equal playing field, while Defendants perverted the outcome with the

1    callous disregard for Plaintiff's rights.   This clever end-around the laws and

2    Supreme Court of Nevada's clear opinion subjected Plaintiff to cruel and unjust

3    hardships ranging from engaging in avoidance tactics, soliciting assistance from

4    health care professionals, moving to another building, and tolerating the

5    intolerable living conditions from the lack of repairs of life-sustaining elements,

6    while living in a hostile environment, with the intent of deceiving Plaintiff and

7    causing Plaintiff injury, such as to constitute malice, fraud, and oppression.

8    Defendants acted with a fraudulent and evil motive and with the deliberate

9    intent to vex, injure, and annoy Plaintiff, and a conscious disregard of Plaintiff's

10   rights. Defendants' acts were despicable, reprehensible, and in blatant violation

11   of the law. There is nothing more deserving of shame than an officer of the

12   court abusing a litigant by perverting the laws he swore to uphold.  Defendants

13   furthermore acted with extreme indifference to Plaintiff's rights, entitling

14   Plaintiff to exemplary and punitive damages for this cause of action.

15                              **FIFTH CAUSE OF ACTION**

16          (by Plaintiff for negligent infliction of emotional distress by all Defendants)

17   78. Plaintiff  incorporates herein by reference all of the above allegations as if fully

18        set forth in paragraphs 1  through 77;

19   79. Defendants had a legal duty to refrain from engaging in and/or condoning,

20        and/or encouraging sexual harassment on a quid pro quo basis and on a hostile

21        environment basis and from engaging in discrimination and intentional infliction

22        of emotional distress and the negligent  infliction of emotional distress, using

23        perversions of the State court system apparently willing to cooperate because

24        Plaintiff's handicaps signaled Plaintiff would be an easy mark against which to

25        discriminate by applying different statutes and rules and ethics to her. Each had

a duty to act as a checks and balance against one another's incompetency or scheme to defraud Plaintiff, as well as each had a duty of care to ensure that no such harm would come to Plaintiff as a result of being a woman living at Senior Garden Apartments under the control of Ricciardelli's agents, who would then be covered-up for by court officials, one wearing a black robe in disgrace and shame, for these officers of the court actually did 'rape' Plaintiff of her rights. The negligent infliction of emotional distress was exacerbated when Defendants not only stood around and watched the others commit flagrant violations of the law, each actively took part in a conspiracy to conceal the acts by perverting the facts regarding the second bite of the apple, the definition of remand, and the dates Plaintiff filed the remedial actions.  A conspiracy does not require that the participants know one another (although in this matter, they did), but only that the end goal is the same, i.e., to oust Plaintiff at any cost because a wealthy landlord had the money to pay them to evict in spite of the facts and the law. Defendants, bound under the doctrine of agency, joint conduct, master-servant, *respondeat superior*, and conspiracy, then subjected Plaintiff to influenced officers of the court willing to forsake their livelihood and their reputations and their honor for an unknown quality or quantity that renders them either grossly negligent or severely incompetent or disgustingly arrogant so that, through this corrupted checks and balance and the flagrant dishonoring of their code of ethics, and the besmirching of the sense of honor expected of them, Defendants would have successfully caused sexual, psychological and emotional harm to Plaintiff.

80. As the direct and proximate result of the above-cited wrongful conduct allegations, Plaintiff has suffered damages which are substantial and continuing.

## SIXTH CAUSE OF ACTION

(by Plaintiff for Slander/Defamation by Defendants Ramirez, R. Ricciardelli, Kania, and Newmark)

81. Plaintiff incorporates herein by reference all of the above allegations as if fully set forth in paragraphs 1 through 80..

82. On several occasions on and after Plaintiff moved to the next building to escape Ramirez's actions, which Plaintiff never told anyone the real reason for, not even her best friend, but which Ramirez appeared to 'sense' via Ramirez's remark that Plaintiff was not getting repairs due to leaving his "harem," on June 1, 2016, Ramirez maliciously and willfully, defamed Plaintiff by making statements which Ramirez knew to be false, to R. Ricciardelli, including but not limited to the theft of the space heater, the demand for a new ceiling fan which Plaintiff never made, the broken drawers and oven knobs, and overloading the circuits to make the electricity go out when Ramirez deliberately shorted the wires to compel Plaintiff to sit in the dark, all to induce R. Ricciardelli into evicting Plaintiff. These statements were made with the intent and certain knowledge that they would be repeated in the court actions filed by R. Ricciardelli, and used by Kania and Newmark to belittle Plaintiff as too old and stupid to know how to operate a ceiling fan and oven during the broiling process. The fact that these comments induced two judges to grant summary judgment instead of granting Plaintiff the right to be heard in the injunctive relief and declaratory judgment action, and the fact that these remarks are part of a public record accessible by the public, defame Plaintiff whose reputation as an instructor in the basis of the legal system, i.e., honor and dishonor, as the method to protect their rights, has been tainted.

83. Such statements by Ramirez influence R. Ricciardelli and his agents to judges, characterized Plaintiff as a liar and as being unable to protect her own rights, destroying her credibility as an instructor in this very field, and damaged her good name, character, and reputation.

84. Defendant Ramirez's statements to two handymen Plaintiff befriended, likewise maliciously and willfully defamed Plaintiff and damaged her good name, character and reputation, which handyman Hernandez claimed were so "vile" Hernandez could not repeat them, may be the reason Plaintiff lost several witnesses to Ramirez's actions, including Hernandez and Marsha and Donald McGee, although R. Ricciardelli's forcible eviction of Plaintiff at any cost makes it clear that Ricciardelli relied on Ramirez's representation of Plaintiff's being the one who 'damaged' Ricciardelli's property.

85. That Ramirez knew these statements were false is confirmed by the concealment of the true reason R. Ricciardelli had to find two attorneys willing to violate the law and besmirch Plaintiff in front of judges in open court, for if the evidence established Ramirez's accusations and "vile" name-calling had an ounce of truth, Ricciardelli would have attempted to evict Plaintiff much sooner and on more solid grounds than "no cause."  Ricciardelli never raised any issue to Plaintiff regarding Plaintiff destroying Ricciardelli's property which is why Ricciardelli used the 'no cause' first claim.

86. Defendants had a legal duty to refrain from besmirching Plaintiff, and perpetuating Ramirez's false remarks that Plaintiff broke the ceiling fan, the oven knob, the breakers which cut the electricity, and that Plaintiff did not know how to use an air conditioner or an oven for broiling.  Ramirez's remarks prompted R. Ricciardelli to evict, and Ricciardelli's repeating of the slander to Kania and

Newmark carried over into two courtrooms, where, as the transcripts will show, Kania and Newmark stated unequivocally, as 'believable' officers of the court, that Plaintiff did not know how to use the air conditioner and tried to bake with the oven door open, resulting in the eviction of Plaintiff by Ricciardelli, Kania and Brown through the Star Chambers 'secret' unnoticed hearing, when Brown and Kania saw in the record that Plaintiff attempted to determine if broiling with the oven door slightly open, as Plaintiff had done for fifty years, was appropriate per the owner's manual.  Prejudicing the judge in the injunction action and the declaratory judgment action by making Plaintiff appear too old and stupid to know how to use these appliances was exacerbated by Kania and Newark's assertions that Plaintiff was appealing an appellate court order 'upholding' the eviction, when, the record clearly establishes that the matter was 'remanded' for further proceedings and both actions were filed in September while the appellate ruling issued in October.  Plaintiff 'lost' both actions by those two judges granting 'summary judgment' in spite of the facts and the law, and regardless of the denial of due process which silenced Plaintiff from enjoining a void judgment and collecting evidence that Brown ruled on a fact in the second action, notwithstanding the fact that the second judgment was null and void *ab initio*. While Plaintiff has reservations about how or why these two judges would fall for such absurd arguments, the fact remains that Plaintiff was deprived of her 'remanded' hearing and a remedy via injunctive relief and declaratory judgment on the issue of hostile environment precluding payments of rent.

87. As the direct and proximate result of the above-cited allegations  establishing wrongful conduct regarding the slanderous remarks, Plaintiff has suffered damages which are substantial and continuing as Plaintiff has not achieved a

remedy in the Clark County District Court where Kania and Newmark operate and obstruct justice.

## COUNT VII (A)
## DEPRIVATION OF CONSTITUTIONAL RIGHTS AND PRIVILEGES
## (42 U.S.C. § 1983)

88. Plaintiff incorporates by reference paragraphs 1 through 87.

89. Plaintiff is entitled to the equal protection of the laws under the Fourteenth Amendment of the United States Constitution, as well as freedom from oppressive acts to quell Plaintiff's speaking out to petition for redress via retaliatory eviction and slander inside a courtroom, illegal seizure of property rights under color of law and due process of law under the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

90. Defendants R. Ricciardelli and Kania and Newmark as officers of the court, acting under color of state law, discriminated against Plaintiff because of her gender by encouraging and covering up the sexually harassment and assaults by Ramirez on January 10, 2016, and thereafter through perverted misrepresentations to two judges in open court and on the very public record of the transcripts (accessible by any party wanting to put the information on the Internet), and this deprived Plaintiff of her right to equal protection of the law. The deliberate perversions and the abuse of the courts has a chilling effect on the entire nation, and Plaintiff suffers from the betrayal of those with oaths of office who either perpetrated or 'bought' the stories regarding who actually 'took the second bite of the apple,' for as the transcript in the case Newmark

defended, the judge was so enthralled or enticed by Newmark that he made the ridiculous comment "You've (plaintiff) just given me the reason to rule against you. You cannot take a ruling from one court into another court action to use it there," which befuddled Plaintiff to the point of choking up since the entire purpose of a declaratory judgment action is to discover the adverse party's interpretation of a law and use its 'accuracy' in a claim elsewhere, not to mention why law books are replete with case cites and opinions that are carried into other actions in memorandum of points and authorities. Recovering from a lengthy barrage of inane 'Wonderland-like' non-sequiturs becomes the equivalent of stumbling through a mind-field of the mind to anyone who knows the basics of the law, as evidenced by the embarrassment, humiliation, emotional distress, horror, and grief these falsifications and patently absurd accusations caused Plaintiff standing before judges while being made to look like a fool.

91. Further, R. Ricciardelli continued personally, and through agents, to impose a hostile living environment on Plaintiff in which she feared the loss of her privacy and right to her own body and the possible adverse eviction actions against her, including filing two actions in the same court for the same claim which is precluded by Nevada law, using biased and discriminatory court processes to silence Plaintiff and falsifying court records to cover up the legitimate remand by the appeals court who intended to ameliorate the unjust 'secret' star chambers hearing perpetrated by Ricciardelli, Kania and Brown. As described above she

was placed in a category separate from other tenants in that she was actually

subjected to hostility by her superiors, which deprived her of an opportunity to

retain property rightfully hers in order that Defendants could avoid the penalties

which accompany violating NRS §§118.010, 118,020, and 118.540, making this

the equivalent of a racketeering scheme to use a crime to cover up a crime.

Plaintiff suffered by being deprived of the opportunity to enforce legislatively-

enacted law intended for her protection, as well as an economic deprivation

being thrown into the streets from a furnished apartment into an unfurnished

apartment after 30 days of paying exorbitant fees to 'group homes' who take

advantage of homeless and handicapped people.

92.  Plaintiff, as a citizen and Nevada state inhabitant, was entitled to due process

protection of freedom from an arbitrary action which jeopardized her property

interest in her rented apartment (notwithstanding the habitability issues Plaintiff

raised) in that she should not have been subjected arbitrarily to the fear of losing

her home or of having to provide sex to the handyman as a quid pro quo for

keeping the job. Further, Plaintiff should not have been subjected arbitrarily to

the fear of losing the enjoyment of a proper and pleasant living environment, or

to other adverse actions which she feared and which deprived her of the proper

enjoyment and efficiency of her handicap-accessible home, or, suffer the

degradation of 'arguing' against 'learned' attorneys who used every opportunity

to malign Plaintiff to judges in open court and on the record in order to besmirch

Plaintiff as an irresponsible "old lady who doesn't know how to use an air

conditioner or oven' in order to establish the presumption that an officer of the court is more credible than an unrepresented party. Defendants' actions deprived Plaintiff of her due process liberty and property interests guaranteed to her by the Constitution of the United States.

93. The above-described wrongful actions of Kania and Newmark were undertaken when they were acting under the color of state law, as officers of the court, and said actions deprived Plaintiff of federal equal protection and due process rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution, and made actionable by 42 U.S.C. § 1983 (The Civil Rights Act).

## COUNT VII (B)
### CONSPIRACY TO DEPRIVE PERSONS OF EQUAL PROTECTION OF THE LAWS
### (42 U.S.C. § 1985)

94. Plaintiff incorporates by reference paragraphs 1 through 93 as if fully set forth herein.

95. R. Ricciardelli conspired with his two attorneys, including with Defendants Kania and Newmark, and perhaps with others behind the scenes such as Brown through Kania, to deprive Plaintiff of equal protection of the laws and of equal privileges and immunities under the laws, as further set forth in all Counts set forth above.

96. Each conspirator, ergo, Ramirez, R. Ricciardelli, Kania, and Newmark, committed some acts in furtherance of the conspiracy which included covering up the mandate which prohibits retaliatory eviction, filing a second unlawful action for

the same claim, concealing Brown's alteration of Plaintiff's motion for a continuance, filing a false document into a court of law stating the "motion as filed herein" was approved when Brown changed the date; filing a fraudulent order into the court record claiming a Motion for Telephonic appearance was approved to conceal the fact Brown changed the hearing date in order to redirect Plaintiff's focus from the altered motion, conducting a secret hearing, and refusing to obey the appellate court's order remanding the action.  The cover-up extended to Plaintiff's two other actions, both filed September 27, 2017, where Kania and Newmark pushed the false narrative that Plaintiff filed the actions as an objection to the appellate decision, while Kania and Newmark knew the further proceedings would have provided the due process hearing Plaintiff was denied.  The cover up also included misrepresenting that Plaintiff did not like the remand from the appellate court, that Brown's ruling was upheld when remand does not indicate that definition, and that Plaintiff knew on September 27th what the ruling would be on October 19th, defaming Plaintiff as a bumble-head 'pro se' who did not understand the law or her rights.  Kania and Newmark finagled their way to depriving Plaintiff of being heard in the injunctive relief action and the declaratory judgment action through the gross misrepresentations of the facts and the law, denying Plaintiff due process and equal protection under the law.

97. As a result of the conspiracy, Plaintiff was injured by Defendants' wrongful acts in her person and property and deprived of having and exercising her rights and

privileges as a citizen of the United States, as is more fully set forth in the above Counts.

98. Defendants had a legal duty to protect Plaintiff's rights, including R. Ricciardelli, M.A. Ricciardelli, the Ricciardelli Family Trust, and Senior Garden Apartments, since, as landlords renting to the public under the laws of the State of Nevada and the Fair Housing Act, each is required to prevent discrimination and play by the standards of fair play regarding due process.

99. Defendants Brown, Kania, and, Newmark are bound by sacred oaths of office to uphold the Constitutions of the State of Nevada and the United States, and have perverted that oath to conspire with Ricciardelli to deprive Plaintiff of due process, property rights via illegal seizure through abuse of court process, and, equal protection under the law.  The reckless disregard for the law is exacerbated by the fact that these three attorneys know the law, yet conspired with Ricciardelli to alter Plaintiff's motion, misname the motion actually 'approved', file a falsified document into a legal court record, and, conduct a secret hearing without correcting the error after receiving a remand from the appellate court.

100.    The machinations used to trick and defraud Plaintiff are odious and despicable wrongful acts when committed by officers of the court who are sworn to protect all litigants, not just their clients, and had only one purpose and that was to thwart the law which Defendants believed was going to be easy going against an elderly, partially blind, crippled WOMAN whom they may have believed should have been flattered by Ramirez's unwanted advances. Obviously men who have to rely on coercion to get sexual favors cannot

1    comprehend either the sanctity of Plaintiff's vow of chastity or the permanent

2    demeaning of Plaintiff's proposed status as a sex slave.

3    101.    The Constitutional deprivations by Defendants are the proximate cause

4    of damage to Plaintiff.

5                              COUNT VIII

6                    NEVADA CONSTUTIONAL DEPRIVATIONS

7    102.    Plaintiff's rights under the Nevada Constitution, at Article 1, section 8,

8    were violated by Defendants who deprived Plaintiff of the right to free speech by

9    chilling Plaintiff's petition for redress from landlord and HUD, the right to

10   possess property in the form of a lease which, along with State law, requires a

11   landlord to maintain a habitable premise, the right to due process which

12   precludes ignoring a remand from an appellate court, filing summary judgment

13   defenses as a way of depriving Plaintiff of injunctive or declaratory relief through

14   the fraudulent representation of the facts and the law, and, denying equal

15   protection under the law by officers of the court.

16   103.    Defendants' violation of the right to petition for redress by speaking out

17   against sexual harassment, the right to possess property rights and demand

18   repairs without surrendering her body as payment, the right to due process of

19   law without abuse and perversion of the court system, and, the right to equal

20   protection under the law are the proximate cause of damage to Plaintiff.

21                               COUNT IX

22         NEVADA REVISED STATUTE AT § 118.010, 118, 020, AND 118.540

23   104.    Plaintiff spelled out clearly in Plaintiff's action for injunctive relief how

24   Defendants' enforcement of a void judgment deprived Plaintiff of the right to

25   stand her ground and ensure that the legislatively-enacted law prohibiting

                                  47

1    retaliatory eviction was upheld and implemented.  Instead, Defendants

2    obstructed and thwarted all legal efforts Plaintiff attempted, thereby desecrating

3    the law, the intent of the legislature, the authority of the State, and the will of

4    the people.

5    105.    By being forcibly evicted, Plaintiff could not see that the perpetrator of

6    the sexual harassment was the one to suffer the penalties of his acts, and was

7    made to pay the price for reporting the actions Plaintiff attempted to escape, in

8    effect, rendering the law of no effect and sending the message that officers of

9    the court could decide which laws were to be enforced and which were not.

10    106.    These acts are the proximate cause of damage to Plaintiff.

11    **PRAYER FOR RELIEF**

12    AS TO THE FIRST CAUSE OF ACTION

13    For (1) compensatory damages, according to proof, including general and special

14    and (2) for punitive and exemplary damages, in an amount to punish SENIOR

15    GARDEN APARTMENTS, RUSSELL RICCIARDELLI, AND STEVEN RAMIREZ for their

16    wrongful conduct and deter future such conduct by SENIOR GARDEN APARTMENTS,

17    RUSSELL RICCIARDELLI, MARY ALICE RICCIARDELLI, RICCIARDELLI FAMILY TRUST, and

18    STEVEN RAMIREZ, but not less than $40,000.00.

19    AS TO THE SECOND CAUSE OF ACTION

20    For (1) compensatory damages, according to proof, including general and special

21    and (2) for punitive and exemplary damages, in an amount to punish SENIOR

22    GARDEN APARTMENTS, RUSSELL RICCIARDELLI, AND STEVEN RAMIREZ for their

23    wrongful conduct and deter future such conduct by SENIOR GARDEN APARTMENTS,

24    RUSSELL RICCIARDELLI, STEVEN RAMIREZ and others, but not less than $60,000.

25    AS TO THE THIRD CAUSE OF ACTION

1   For (1) compensatory damages, according to proof, including general and special

2   and (2) for punitive and exemplary damages, in an amount to punish SENIOR

3   GARDEN APARTMENTS, RUSSELL RICCIARDELLI, MARY ALICE RICCIARDELLI,

4   RICCIARDELLI FAMILY TRUST, and  STEVEN RAMIREZ and others, now identified as

5   Does #1 and 2, EDWARD D. KANIA, ERIC R. NEWMARK , and  DAVID F. BROWN for

6   their wrongful conduct and deter future such conduct by SENIOR GARDEN

7   APARTMENTS, RUSSELL RICCIARDELLI, MARY ALICE RICCIARDELLI, RICCIARDELLI

8   FAMILY TRUST, and STEVEN RAMIREZ and others, now identified as Does #1 and 2,

9   EDWARD D. KANIA, ERIC R. NEWMARK , and  DAVID F. BROWN, but not less than

10  $10,000.00.

11  AS TO THE FOURTH CAUSE OF ACTION

12  For (1) compensatory damages, according to proof, including general and special

13  and (2) for punitive and exemplary damages, in an amount to punish SENIOR

14  GARDEN APARTMENTS, RUSSELL RICCIARDELLI, MARY ALICE RICCIARDELLI,

15  RICCIARDELLI FAMILY TRUST, and STEVEN RAMIREZ,  EDWARD D. KANIA, ERIC R.

16  NEWMARK , and  DAVID F. BROWN for their wrongful conduct and deter future such

17  conduct by SENIOR GARDEN APARTMENTS, RUSSELL RICCIARDELLI, MARY ALICE

18  RICCIARDELLI, RICCIARDELLI FAMILY TRUST, and STEVEN RAMIREZ and others, now

19  identified as Does #1, 2, and #6 EDWARD D. KANIA, ERIC R. NEWMARK , and  DAVID

20  F. BROWN, but not less than $20,000.00

21  AS TO THE FIFTH CAUSE OF ACTION

22  For (1) compensatory damages, according to proof, including general and special,

23  but not less than $20,000.00;

24  AS TO THE SIXTH CAUSE OF ACTION

25

1    For (1) compensatory damages, according to proof, including general and special,

2    but not less than $10,000.00;

3    AS TO THE SEVENTH CAUSE OF ACTION

4    For (1) compensatory damages, according to proof, including general and special,

5    but not less than $1.000,000.00 for each Constitutional violation found; and

6    AS TO ALL DAMAGES
     1-  For interest as provided by law;
7    2-  For costs of suit; and,
8    3-  For such further relief as the Court may deem just and proper.

9    JURY TRIAL REQUESTED BY PLAINTIFF
         Plaintiff seeks a jury trial on all counts, with emphasis on the Constitutional
10   violations.

11
         DATED THIS 16TH DAY OF APRIL, AD2018
12                                        Respectfully submitted by:

13

14                                        Victoria-Joy Godwin
                                          Unrepresented Party
15

16                        VERIFICATION

17       The Plaintiff has reviewed the complaint as Amended herein, and is satisfied that
     all of the parties identified are necessary parties and that the claims known to Plaintiff
     at this time have been included.  Regarding the allegations of which Plaintiff has
18   personal knowledge, the Plaintiff knows or believes them to be true.  This verification is
     made subject to both the penalties of perjury and Plaintiff's full commercial liability,
19   that the allegations are true, correct, complete, and not misleading, so help me God.

20                        Sworn this 16th day of April, AD2018

21

22                        Victoria-Joy Godwin

23

24

25

                                50